STATE OF NORTH CAROLINA v. RONALD DOUGLAS JENERETT

No. 32

(Filed 12 April 1972)

**1. Criminal Law § 106— nonsuit — necessity for corroboration of confession**

A felony conviction may not be based upon or sustained by a naked extrajudicial confession of guilt uncorroborated by any other evidence.

**2. Homicide § 21— murder during robbery — evidence aliunde confession — sufficiency**

In this prosecution for first degree murder, there was ample evidence *aliunde* defendant's confession to sustain a finding by the jury that defendant shot and killed deceased while robbing him, notwithstanding defendant introduced evidence which tended to contradict the testimony for the State, where the State presented evidence tending to show that the owner of a grocery store was shot to death in his store, that while 100 to 150 feet from the store defendant asked another person who ran the store and if anyone was in the store with the owner, that at that time defendant had a .32 caliber pistol, that a witness saw defendant go into the store when the owner was in the store alone, heard a noise like a pistol shot, and saw defendant run out of the store, that the owner was found lying on the floor of the store and thereafter died as the result of a gunshot wound in the chest, that when an officer arrived at the scene, the cash register was empty except for nickels and pennies, that shortly after the shooting defendant was seen with considerable money in his possession, and that defendant later told a friend that he killed "the dude" and hid the money in the woods.

**3. Homicide § 4— felony-murder rule — premeditation and deliberation**

When a murder is committed in the perpetration or attempt to perpetrate any robbery, burglary or other felony, G.S. 14-17 declares it murder in the first degree; in those instances the law presumes premeditation and deliberation and the State is not put to further proof of either.

**4. Criminal Law §§ 99, 170; Homicide § 15— homicide during robbery — ownership of stolen property — questions by court**

In a prosecution for a homicide committed in the perpetration of a robbery, defendant was not prejudiced by the trial court's inquiry as to the ownership of the store where the crime occurred and the merchandise therein, proof of such ownership not being essential to establish the robbery.

**5. Criminal Law § 34; Homicide § 15— confession — intent to commit other crimes — competency**

In a prosecution for a homicide committed in the perpetration of a robbery, a portion of defendant's confession which related to his

intent to commit other robberies prior to the commission of the crime for which he is charged, *held* competent to show defendant's intent to commit a robbery, to establish the chain of circumstances leading up to the matter on trial, and to properly develop the evidence in the case at bar.

**6. Criminal Law § 169— objection — similar testimony admitted without objection**

The benefit of an objection is lost where the same evidence had twice been admitted without objection.

**7. Criminal Law § 51— caliber of bullet — expert testimony — absence of finding by court**

The trial court did not err in allowing a police officer to give an opinion as to the caliber of the bullet removed from the body of the deceased where there was ample evidence to support a finding that the officer was an expert in ballistics, notwithstanding the court did not specifically find that the officer was an expert, since it will be presumed from the admission of the testimony that the court found the officer to be an expert.

**8. Criminal Law § 166— abandonment of assignments of error**

Assignments of error not discussed in the brief are deemed abandoned. Supreme Court Rule 28.

BELATED appeal (permitted by our writ of *certiorari)* by defendant from *Lupton, J.,* at the 14 June 1971 Session of FORSYTH Superior Court.

Criminal prosecution upon a bill of indictment, proper in form, charging defendant with the first degree murder of Charles Bradley Samuel. The jury returned a verdict of guilty as charged with recommendation of life imprisonment. From judgment in accordance therewith, defendant appealed.

On 4 December 1971 at approximately 1:30 p.m., Charles Bradley Samuel, owner of a small grocery store on Jackson Street in Winston-Salem, North Carolina, was shot to death in his store.

The evidence for the State tends to show: On the morning of 4 December 1971, defendant left home with his brother Eli Jenerett. Defendant had a .32 caliber pistol in his possession. He went to the home of Julius Thompkins where he got a .25 automatic pistol. Defendant and Eli then went to Minor's Market to hold it up, but there was a customer in the store who knew Eli so they left. They then went to another store on 18th Street and Claremont Street. The lady who ran that store looked so pitiful they decided not to rob her.

Defendant then went to the home of Doretha Gandy, at which time defendant had two pistols in his possession. Shortly after 11 a.m. defendant and Carl Watson left the Gandy home to go get a beer. After buying the beer and eating lunch, they walked east on 24th Street to Jackson Street, about 100 to 150 feet from Samuel's store. There defendant saw Chalmers Gray Bohannon, Jr., and some other boys playing cards. This was about 1:15 p.m. Defendant asked if the Samuel store was open, who ran it, and if the owner was alone. While talking to these boys, defendant pulled out his .32 caliber pistol and threatened to shoot one of them. These boys left, and defendant watched the store until some men who were in there came out. He then entered.

About 1:30 that afternoon Preston Webb, who lived across the street from Samuel's store, saw a man whom he identified as the defendant hurriedly walk up the street and enter Samuel's store. At that time no one was in the store except defendant and Samuel. Three or four minutes later Webb heard a sound like a "little .22" being fired, and saw the defendant come out the front door. At the same time, Linda Attucks was about to enter the store. She collided with defendant who was leaving. Linda and defendant stood there for about a minute before defendant ran around the corner of the building. Linda then entered the store, saw the body of Samuel on the floor and screamed. Webb came across the street, saw Samuel's body, and told Linda to call the police and an ambulance, which she did. Samuel died shortly thereafter as a result of a .32 caliber bullet wound in the chest.

About 2 p.m. on the same day, Elizabeth Crosby saw the defendant in a downtown store. She asked defendant if he had heard that Samuel had been killed, and he joked with her about it. She saw that defendant's wallet contained a large sum of money. A few weeks later the defendant was talking with a friend, Johnny George Johnson, Jr., about the Samuel incident. Johnson asked defendant what he had done with the money, and defendant replied that he had killed "the dude" and hid the money, $1,000, in the woods.

On 28 January 1971 a warrant was issued charging defendant with the murder of Samuel. At the time of his arrest on 28 January 1971 defendant was orally advised of his rights. He refused to sign a rights waiver and asked for an attorney.

---

---

R. Lewis Ray, an attorney with the Forsyth County Legal Aid Society, was designated to represent defendant.

On 16 February 1971 defendant asked to talk with C. S. Pinkston and E. I. Weatherman, the arresting officers. Before talking to defendant, the officers called defendant's attorney who stated it would be all right for them to question the defendant, that he did not wish to be present, but asked them to call him before they talked to defendant. On 17 February 1971 defendant was brought into the detective office and was again advised of his rights by Officer Pinkston. Officer Weatherman called defendant's attorney, and the attorney again stated it would be all right for them to talk to defendant, and that he did not desire to be present but would talk to defendant on the telephone. Defendant then spoke briefly to his attorney on the telephone. The officers again fully advised defendant of his rights as required under *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), following which defendant signed this statement:

> "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me by anyone. In fact, I have just talked by phone to my lawyer, Lewis Ray." Signed "Ronald Jenerett."

After signing this statement, defendant gave the officers a detailed account as to what occurred on the date in question, stating in summary that he went into the store after some other people had left and told Samuel he wanted some meat, which he knew Samuel did not have; that he and Samuel walked back toward the meat counter, and Samuel asked him what else he wanted; that he pulled his .32 pistol from his pocket and told him, "the money"; that he went to the cash register, opened it, and took all the money except the pennies and nickels; that he then told Samuel to give him his pocketbook; that Samuel did not have any money in his pocketbook but showed it to him, and Samuel did give him the money from his pocket. Samuel then grabbed him and wrestled with him, and he shot Samuel and ran from the store.

Officer Pinkston stated that in his opinion at the time defendant signed the waiver and made this statement defendant was not under the influence of any drugs, narcotics, or any alcoholic beverages.

Defendant offered evidence tending to show that the confession he gave was not a true confession; that when he made this statement he was under the influence of LSD, which he had concealed in his boots and had taken while in jail; that the only reason he made the confession was to get out on bond and to see a doctor about "bad trips"; and that he made up the story about the robbery-shooting of Samuel after reading the police report of the incident.

Linda Attucks testified that the person she ran into at the front door of Samuel's store was definitely not the defendant. Larry Watkins testified that about 1:30 p.m. on the day of the incident he was with the defendant buying marijuana from defendant for $25.

Defendant admitted that he was near the Samuel store on the date in question, but denied that he either entered the store on that date or robbed or shot the deceased.

*Attorney General Robert Morgan, Associate Attorney William Lewis Sauls, and Deputy Attorney General James F. Bullock for the State.*

*R. Lewis Ray, of the Legal Aid Society of Forsyth County, for defendant appellant.*

MOORE, Justice.

[1] Defendant first assigns as error the denial of defendant's motions for judgment of nonsuit made at the conclusion of the State's evidence and at the conclusion of all the evidence. Defendant contends that a mere confession is not sufficient to warrant a conviction, and that it is incumbent on the State to show independent of his confession that a robbery or attempted robbery was actually committed, and that Samuel was killed in the perpetration of such robbery or attempted robbery in order to convict him of first degree murder. Defendant relies on *Opper v. United States,* 348 U.S. 84, 99 L.Ed. 101, 75 S.Ct. 158 (1954), and *Smith v. United States,* 348 U.S. 147, 99 L.Ed. 192, 75 S.Ct. 194 (1954), which hold that a felony con-

viction may not be based upon or sustained by a naked extra-judicial confession of guilt uncorroborated by any other evidence. This has long been the law in North Carolina.

As stated by Justice Rodman in *State v. Whittemore,* 255 N.C. 583, 589, 122 S.E. 2d 396, 400-01 (1961), quoting from *State v. Cope,* 240 N.C. 244, 81 S.E. 2d 773 (1954):

" ' . . . (T)he overwhelming authority in this country is to the effect that a naked extrajudicial confession of guilt by one accused of crime, unaccompanied by any other evidence, is not sufficient to warrant or sustain a conviction. . . . ' "

Justice Rodman, continuing, said:

"Evidence to corroborate the confession need not be direct. It may be circumstantial. *State v. Thomas,* 241 N.C. 337, 85 S.E. 2d 300. . . . 'Full, direct, and positive evidence, however, of the *corpus delicti* is not indispensable. A confession will be sufficient if there be such extrinsic corroborative circumstances, as will, *when taken in connection with the confession,* establish the prisoner's guilt in the minds of the jury beyond a reasonable doubt.' [*Masse v. United States,* 210 F. 2d 418 (5th Cir. 1954), cert. denied 347 U.S. 962, 98 L.Ed. 1105, 74 S.Ct. 711 (1954)]."

[2] Therefore, the question to be decided in the present case is whether there is evidence of sufficient probative value, *aliunde* the confession, to establish the fact that the crime as charged has been committed by the defendant.

The evidence for the State tends to show the following facts: Defendant talked to Chalmers Gray Bohannon at the corner of 24th Street and Jackson Street, approximately 100 to 150 feet from Samuel's Grocery Store, and asked Bohannon who ran the store and if anyone was in the store with the owner. At that time defendant had a .32 caliber pistol. Defendant was seen by Preston Webb going into the grocery store at a time no one except Samuel was there; soon afterward, Webb heard a noise like a pistol shot and defendant ran out of the store. A lady met defendant as he came out, and when she went in she saw Samuel lying on the floor. She screamed and witness Webb ran to the store and also saw Samuel on the floor. Samuel was taken to the hospital and died as the result

of a gunshot wound in the chest. The testimony further shows that when the officer arrived at the scene, the cash register was empty except for nickels and pennies and that four crumpled checks were found near the door. Shortly after the shooting defendant was seen with considerable money in his possession, and later in a conversation with a friend of his, Johnny George Johnson, defendant stated that he killed "the dude" and hid the money in the woods.

In considering the motions for compulsory nonsuit in this case, we are not concerned with the weight of the testimony or with the truth or falsity, but only with the sufficiency to carry the case to the jury and to sustain the indictment. *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1969). Considering the evidence in the light most favorable to the State, as we must, we conclude that there was ample evidence, *aliunde* the defendant's confession, to sustain a finding by the jury that defendant shot and killed Samuel while robbing him.

[3] When a murder is committed in the perpetration or attempt to perpetrate any robbery, burglary or other felony, G.S. 14-17 declares it murder in the first degree. In those instances the law presumes premeditation and deliberation, and the State is not put to further proof of either. *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970).

Although defendant introduced evidence which tended to contradict the testimony for the State, the jurors chose to believe the evidence presented by the State. They alone are the triers of fact. *State v. Satterfield*, 207 N.C. 118, 176 S.E. 466 (1934). The State's evidence of the *corpus delicti*, in addition to defendant's confession of guilt, notwithstanding defendant's evidence in conflict, is sufficient to carry this case to the jury and to support the verdict of guilty as rendered by the jury. *State v. Stinson*, 263 N.C. 283, 139 S.E. 2d 558 (1965). The motions for judgment as of nonsuit were properly overruled.

[4] Defendant next contends that the court erred by asking Mrs. Samuel the following questions:

"Q. Just one minute. Who did you say owned the store? Or did you say? Were you asked that question?

"A. No, I wasn't asked that question.

State v. Jenerett

"Q. Well, excuse me. Did your husband have a middle name or second name?

"A. Yes.

"Q. What was his full name?

"A. Charlie Bradley Samuel."

At this time the court asked the solicitor to approach the bench, and following a conference at the bench the solicitor asked the following questions:

"Q. Mrs. Samuel, who owned this store?

"A. It was in my husband's name, Charles. Charlie Bradley Samuel owned the store.

"Q. It was in his name?

"A. Yes.

"Q. Did he own the building?

"A. Yes.

"Q. And did he also own the merchandise in the building?

"A. Yes."

Defendant contends that the ownership of the property was a "crucial and germane element of the State's case," and that by inquiring as to the ownership the trial judge was attempting to "plug up the loopholes." Defendant is charged with a felony-murder, and proof of the ownership of the store or merchandise therein is not essential to the robbery charge. *State v. Rogers,* 273 N.C. 208, 159 S.E. 2d 525 (1968). Defendant does not point out how these questions prejudiced his case, and unless prejudicial effect on the result of the trial is shown, the error, if any, will be considered harmless. *State v. Holden,* 280 N.C. 426, 185 S.E. 2d 889 (1972) ; *State v. Perry,* 231 N.C. 467, 57 S.E. 2d 774 (1950) ; 2 Strong, N. C. Iudex 2d, Criminal Law § 99, p. 634. It must appear with ordinary certainty that the rights of the prisoner have in some way been prejudiced by the conduct of the court before such conduct can be treated as error. *State v. Holden, supra.* No such showing appears in this case. This assignment is without merit.

**[5]**  Defendant next contends that the court erred in allowing a police officer to read into evidence that portion of the confession which related to defendant's intent to commit other crimes prior to the commission of the crime for which he is charged, defendant contending that the evidence of one offense is inadmissible to prove another and independent crime—wholly disconnected and in no way related to each other—citing *State v. Choate,* 228 N.C. 491, 46 S.E. 2d 476 (1948). As a general statement this is true, but as stated by Justice Lake in *State v. Atkinson,* 275 N.C. 288, 312-13, 167 S.E. 2d 241, 256 (1969) :

> "  . . . While it is well established that evidence of other crimes, having no bearing upon the crime for which the defendant is on trial, may not be introduced prior to his taking the stand as a witness in his own behalf, it is equally well settled that all facts, relevant to the proof of the defendant's having committed the offense with which he is charged, may be shown by evidence, otherwise competent, even though that evidence necessarily indicates the commission by him of another criminal offense. *State v. Christopher,* 258 N.C. 249, 128 S.E. 2d 667; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364; *State v. Harris,* 223 N.C. 697, 28 S.E. 2d 232; Stansbury, North Carolina Evidence, 2d Ed., § 91. Thus, such evidence of other offenses is competent to show. . . the *quo animo,* intent, design, guilty knowledge, or scienter, or to make out the *res gestae,* or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions. *State v. Christopher, supra; State v. Harris, supra;* Stansbury, North Carolina Evidence, 2d Ed., §§ 91 and 92."

This portion of defendant's statement was competent to show defendant's intent to commit a robbery and as a part of the chain of circumstances leading up to the matter on trial. It was also competent to properly develop the evidence in the case at bar. *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487 (1970). This assignment is overruled.

**[6]**  Defendant next contends that the court erred in allowing Officer Weatherman, over the objection of defendant, to give an opinion as to the caliber of the bullet taken from the body of the deceased. The bullet in question had been identified by

State v. Jenerett

Dr. Ernest Austin as being the bullet removed from the body of the deceased and was introduced into evidence without objection. Officer Weatherman was first asked to identify the bullet. He replied: "It is a .32 missile from a .32 cartridge. This particular item was turned over to me by Dr. Austin." No objection was made at this time or shortly thereafter when he testified: "I have been a police officer for nearly thirty-one years. I have had training in firearms. We have had several days over the years of training. I have investigated other cases in which bullets were involved and used numbers of times. I believe I am familiar with the caliber of weapons. In my opinion this projectile in my hands is a .32 caliber bullet from a .32 cartridge." The third time Officer Weatherman was asked to give his opinion as to the caliber of the bullet, defendant did object, and the objection was overruled. Since the same evidence had twice been admitted without objection, the benefit of this objection is lost. *State v. Hairston,* 280 N.C. 220, 185 S.E. 2d 633 (1972); *State v. Minton,* 234 N.C. 716, 68 S.E. 2d 844 (1952).

[7] While the trial court did not expressly find the witness to be an expert in ballistics, the court did allow him to give his opinion as to the caliber of the bullet. By admitting the testimony as to the caliber of the bullet, the court presumably found him to be an expert. There was ample evidence to support such finding. *Teague v. Power Co.,* 258 N.C. 759, 129 S.E. 2d 507 (1963); *State v. DeMai,* 227 N.C. 657, 44 S.E. 2d 218 (1947). This assignment is overruled.

[8] The other assignments of error are not discussed in defendant's brief and are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783 (1961); *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970). However, these assignments have been carefully considered and are found to be without merit.

Defendant having failed to show prejudicial error, the verdict and judgment will be upheld.

No error.