STATE OF NORTH CAROLINA v. RICHARD MARTIN BISHOP

No. 89

(Filed 13 June 1977)

**1. Criminal Law § 34.5— other offense—admissibility to show identity**

Evidence that a gun stolen during a robbery and burglary was used by defendant in a break-in at another location some eight days later was relevant to establish defendant's identity as one of the perpetrators of the robbery and burglary in which it was stolen.

**2. Criminal Law § 42.4— stolen gun—sufficiency of identification**

A burglary and robbery victim's testimony that a weapon was a gun stolen from him "as far as [he] could tell" and testimony by defendant's accomplice that "this is the weapon or an identical weapon that came out of the Tucker home the night of the burglary and armed robbery" constituted sufficient identification of the gun to allow its admission into evidence even without the abundance of other more definite testimony presented at the trial to establish the identity of the gun.

**3. Criminal Law § 113.3— recapitulation of testimony—length of defendant's hair**

Defendant was not prejudiced by the court's recapitulation of the evidence and contentions as to the length of defendant's hair on the date of the crimes charged where the court referred specifically to hair length three times in the charge and recounted defendant's testimony concerning the length of his hair, and where none of the identifications of defendant were grounded upon the length of his hair and there was testimony that he had a stocking tied around his head, which presumably might alter the appearance of his hair.

**4. Criminal Law § 86.3— cross-examination of defendant—other criminal activities**

The trial court did not err in permitting the district attorney to continue cross-examination of defendant about his criminal activities after defendant had admitted a lengthy criminal record where there is no indication in the record of bad faith on the part of the State or of any attempt to badger or humiliate defendant.

**5. Criminal Law § 88.2— limiting cross-examination of accomplice—right against self-incrimination**

The trial court did not err in limiting defendant's cross-examination of a State's witness concerning his participation in crimes in South Carolina in response to the witness's assertion of his constitutional right against self-incrimination where the witness testified as an accomplice in the crime charged and had already testified at length acknowledging his substantial involvement in criminal activities, and it is improbable that his response to defendant's inquiry as to his involvement in any crime in South Carolina would have added weight to defendant's assertions as to his incredibility as a witness or would have shown any bias or interest.

ON defendant's appeal under General Statute 7A-27(a) from *Wood, J.*, presiding at the 6 February 1976 Criminal Session of GUILFORD Superior Court. This case was docketed and argued as Case No. 140, Fall Term 1976.

*Rufus L. Edmisten, Attorney General, by Roy A. Giles, Jr., Assistant Attorney General, for the State.*

*E. L. Alston, Jr., attorney for the defendant.*

EXUM, Justice.

Defendant was tried and convicted of first degree burglary and armed robbery. He was sentenced to consecutive terms of life imprisonment on the burglary charge and 20 years on the armed robbery charge.

Defendant presents four arguments upon this appeal. Of most interest is his contention that the trial court erred in allowing certain testimony concerning defendant's alleged participation in a subsequent break-in at another location some eight days after the incident for which he was tried in this case. By this testimony the state sought to show defendant's possession of a gun allegedly stolen from one of the victims of the crime charged. We hold the evidence was properly allowed. Defendant's remaining arguments are of no merit.

The state's evidence tends to show that in the late evening of 14 May 1974, Emmett Z. Tucker and his wife and daughter were at their home on Ritters Lake Road in Greensboro. When Mr. Tucker stepped out of his back door to check the weather, he was rushed by a man crouched over with a gun which he pressed to Mr. Tucker's breast. The two men wrestled, but the fight was ended abruptly when two other men approached. While one of these entered the house, the other hit Mr. Tucker with his gun barrel, knocking him down.

The first assailant, whom Mr. Tucker called "No. 1," took his billfold and removed about $600.00 from it. Then "No. 1" helped Mr. Tucker into the house where his wife and daughter, both bloody, were tied up with television antenna wire. Mr. Tucker was likewise restrained. Two of the men searched the house while the third remained with the Tuckers. The three men finally left and the family managed to untie themselves. Mr. Tucker went for help.

Besides the money and some other items a .380 Remington automatic pistol, which Mr. Tucker had owned since the 1930's, was found to be missing. Mr. Tucker could not identify any of the three men. He said "No. 3" had a stocking over his head. Numbers 1 and 2 wore something over their faces and both had hair that was neither very long nor short.

Two witnesses, Charles Frederick (Red) Rice and Allen Odell Smith, gave essentially identical testimony tending to establish that they had perpetrated the crime at the Tucker residence with defendant, and that defendant was the man called "No. 1" by Mr. Tucker. They testified that Mrs. Tucker had in her possession at the time a .380 automatic pistol which was taken from her by Smith during the robbery and burglary and that defendant Bishop had been given the pistol afterward.

A .380 automatic "squeezer" pistol with a worn handle was offered in evidence and identified as having been recovered from the spot where defendant fell after having been wounded in a break-in at Pegram-West Builders Supply on 22 May 1974. This gun was identified by Mr. and Mrs. Tucker as that which was taken from their home on 14 May.

Defendant sought to establish an alibi defense.

By several assignments of error presented in his first argument, defendant challenges the admissibility of evidence relating to the Pegram-West break-in on 22 May 1974.

It has long been recognized that, notwithstanding the general rule of exclusion of evidence of other crimes in a criminal prosecution, the commission of another crime may be shown if the evidence presented tends to prove any relevant fact other than the character of the accused or his disposition to commit the crime charged. 1 Stansbury's North Carolina Evidence, § 91 (Brandis Rev. 1973).

This Court listed several exceptions to the rule of exclusion in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). One of these was: "Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged." *Id.* at 175, 81 S.E. 2d at 367. *See also Boyd v. United States*, 142 U.S. 450 (1892); *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976); *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974); *State v. McClain*, 282 N.C. 357, 193 S.E. 2d 108 (1972); *State v. Biggs*, 224 N.C. 722, 32 S.E. 2d 352 (1944); *State v. Ferrell*, 205 N.C. 640, 172 S.E. 186 (1934).

In *State v. Grace*, 287 N.C. 243, 213 S.E. 2d 717 (1975), the state introduced evidence of three previous robberies in which defendant had used a pistol identical to that used in the crime charged. Defendant sought to prove alibi. We held the evidence competent on the issue of identity. *See* Annotation, Robbery—Evidence of Other Robberies, 42 A.L.R. 2d 854.

In this case there is plenary evidence that the gun found where defendant fell near the scene of the Pegram-West incident was that taken from the Tucker's home eight days earlier.

Mr. Tucker testified, "I would say in all honesty that is my gun." Mrs. Tucker definitely identified it, as did defendant's alleged accomplices who testified the gun was given to Bishop. There is also ample evidence to show defendant's possession of the gun during the 22 May 1974 break-in at Pegram-West. It was found by police at the spot where defendant fell on that occasion. Although it was not recovered until daylight, some hours after defendant's apprehension, defendant himself acknowledged that the gun recovered and introduced into evidence was that used by himself in the Pegram-West incident. His testimony that he had bought the gun from Rice simply produced a conflict in the evidence which the jury evidently resolved in favor of the state.

[1] There was testimony by two witnesses that defendant had asked for and kept Mr. Tucker's pistol on the night of the crime charged; the same gun was used by defendant in the second crime within a short time and in the same city; in both crimes defendant operated with one companion at least and in both, defendant was the first to accost the victim. The evidence of defendant's participation and use of the Tucker pistol in the Pegram-West incident is relevant to establish his identity as one of the perpetrators of the robbery and burglary in which it was stolen.

[2] Defendant next argues that the court should not have given a charge on the doctrine of recent possession relative to the pistol solely upon the ground that the gun was insufficiently identified both as that stolen from the Tuckers and as that used by defendant at Pegram-West. This contention is frivolous. As we have already observed, the identity of the gun was well established by the testimony of a number of witnesses, including defendant himself. It is true that some of the witnesses were less than absolutely certain in their testimony. Mr. Tucker originally said that the weapon exhibited was his gun "as far as [he] could tell" and Rice testified that "this is the weapon or an identical weapon that came out of the Tucker home the night of the burglary and armed robbery." Such identifications are adequate to allow its admission into evidence even without the abundance of other more definite testimony found in this record to establish the identity of the gun. *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975), *death sentence vacated*, 96 S.Ct. 3207 (1976); *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38

(1974), *death sentence vacated,* 96 S.Ct. 3205 (1976); *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972).

[3] Defendant next argues that the court erred in failing to charge the jury on the discrepancy in the testimony of various state's witnesses as to the length of defendant's hair. This argument is without merit. The record is not altogether clear as to the substance of the testimony involved. One witness told defense counsel on cross-examination that defendant's hair was "nòt quite as long as your hair," at the time of the Tucker crime, while another said his hair on the night of the Pegram-West incident was "approximately the length that it is now." Mr. Tucker said "No. 1" 's hair was neither very long nor short. The length indicated by each of these references is nowhere specified and remains a mystery to us. In any case, the court referred specifically to hair length three times in the charge to the jury. He recounted defendant's testimony that his hair was "down to his chest" on 14 May. The judge also reminded the jury that the witness Smith "testified about his hair length, and you will recall that." Since none of the identifications of defendant were grounded upon the length of his hair and there was testimony that he had a stocking tied around his head, which presumably might alter the appearance of his hair, we can find no error, nor can we conceive of any prejudice to defendant in the court's summary of the evidence on this point. The court recapitulated the evidence and the parties' contentions with reasonable accuracy. *State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839 (1973). Defendant made no objection to these portions of the charge and requested no further instruction. Objections to these portions of the charge are, therefore, deemed waived. *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968).

[4] Defendant next contends the court erred in allowing the state's cross-examination of defendant to continue when the district attorney, as defendant claims, was simply "badgering" and "humiliating" defendant. Defendant's objection is that the district attorney continued to question defendant about his criminal activities after defendant had admitted a lengthy criminal record. We find no merit in this contention.

By testifying in his own behalf, defendant subjected himself to impeachment by questions pertaining to prior instances of specific misconduct. *State v. Foster,* 284 N.C. 259, 200 S.E.

2d 782 (1973); *State v. Black,* 283 N.C. 344, 196 S.E. 2d 225 (1973). We note defendant answered negatively to many of the questions objected to by his counsel. "Whether the cross-examination goes too far or is unfair is a matter for determination of the trial judge and rests largely in his sole discretion." *State v. Blackwell,* 276 N.C. 714, 724, 174 S.E. 2d 534, 541, *cert. denied,* 400 U.S. 946 (1970); *see State v. Black, supra.* There is no indication in this record of bad faith on the part of the state nor of any attempt to badger or humiliate defendant.

[5] Finally, defendant argues that the court erred to his prejudice in limiting his cross-examination of the witness Rice as to his prior acts of misconduct. Rice was an accomplice in the crimes for which defendant was tried, and testified after a grant of immunity as to charges pending against him in Guilford County. This witness seemed to have a rather sophisticated knowledge of the law and recognized his vulnerability to charges in other counties. Thus in response to one of defense counsel's queries as to his participation in criminal activities outside Guilford County, Rice refused to answer, obviously upon the grounds of his Fifth Amendment right against self-incrimination. A conference with Rice's counsel ensued and Rice answered the question in the negative. The court sustained the state's objections to further questions as to that particular incident and as to "any other burglaries in South Carolina . . . ."

The judge in this case apparently decided to limit further examination as to foreign crimes in response to the witness' assertion of his constitutional right against self-incrimination. There is no indication that the court's ruling deprived defendant of any opportunity for material cross-examination. The questions to which the state's objections were sustained had nothing to do with Rice's testimony on direct examination. One question was repetitive, being directed toward Rice's participation in a crime which he had already denied. As to that crime, it was within the trial court's discretion to prohibit further questioning. *State v. Blackwell, supra.* The second question concerned other crimes allegedly committed in South Carolina. This witness had already testified at length acknowledging his very substantial involvement in criminal activities. That testimony occupies six to seven pages of the record. He testified, moreover, as an accomplice in the crime charged. It appears most improbable that his response to defendant's inquiry as to his

involvement in any crime in South Carolina would have added any weight to defendant's assertions of his incredibility as a witness. Nor is there any contention that an affirmative answer would have shown any bias or interest on the part of this witness.

We find no error prejudicial to defendant in the court's rulings on this phase of the case.

We find that defendant was accorded a fair trial in which there was

No error.