State v. Hyman

STATE OF NORTH CAROLINA v. JOHNNY L. HYMAN

No. 132A84

(Filed 8 January 1985)

1. **Criminal Law § 34.8— evidence of other offenses—admissible to show scheme**

Where defendant's trial was held before 1 July 1984, evidence of other crimes for which defendant was not on trial was properly admitted under common law rules of evidence to show a common scheme where all of the crimes arose from two robberies and the evidence showed that during both robberies two men stopped at a service station for gas, engaged the attendant in casual conversation, robbed the attendant at gunpoint, placed the attendant in the car and drove for about fifteen minutes, ordered the attendant to get out of the car and run, and fired a shot in his direction. Rule 404(b), N. C. Rules of Evidence.

2. **Criminal Law § 42.5— credit card matching receipt at robbery scene—no evidence of defendant's possession—no prejudice**

In a prosecution arising from a service station robbery in Fayetteville, North Carolina for which defendant was arrested in Conway, South Carolina, there was no prejudice in the admission of a credit card obtained from the Conway Police Department which bore the same number as the top credit card receipt found at the Fayetteville service station, although there was no evidence that defendant or his companion had ever possessed the card, because defendant did not show a reasonable possibility that exclusion would have changed the result at trial.

3. **Criminal Law § 60.2— fingerprint card—identification of defendant as person fingerprinted—sufficient**

There was no error in the admission of a fingerprint card where a jailer testified that he took the fingerprints of Johnny Hyman and a fingerprint technician testified that those fingerprints matched those at the crime scene, but the jailer never identified defendant as being the same Johnny Hyman he fingerprinted. The jailer's testimony permitted a reasonable inference that he took defendant's fingerprints and the failure to provide a more explicit identification goes to the weight to be given the evidence, not its admissibility or sufficiency.

Justice VAUGHN took no part in the consideration or decision of this case.

APPEAL by the defendant from the judgment of *Judge Wiley F. Bowen* entered November 8, 1983 in Superior Court, CUMBERLAND County.

The defendant was indicted in July of 1980 on charges of armed robbery, aggravated kidnapping, and assault with a deadly weapon with intent to kill inflicting serious bodily injury. The

defendant pleaded guilty to these charges and was sentenced on December 12, 1980 at the regularly calendared term of Superior Court, Cumberland County, Judge Edwin S. Preston, Jr. presiding.

The defendant subsequently petitioned this Court for a writ of certiorari to review the judgment. The petition was denied June 2, 1982. He then petitioned the United States District Court for the Eastern District of North Carolina for a writ of habeas corpus seeking to have his guilty pleas set aside as being unconstitutionally obtained. The petition was granted on July 27, 1983, and the State was directed to retry the defendant or release him.

The defendant was retried in Superior Court, Cumberland County. He was found guilty of all charges on November 8, 1983 and sentenced to consecutive terms of life imprisonment for the armed robbery and kidnapping convictions, and a twenty year term of imprisonment for the assault conviction to run consecutively with the kidnapping sentence. The defendant appealed the armed robbery and kidnapping convictions to this Court as a matter of right under N.C.G.S. 7A-27(a). Heard in the Supreme Court October 11, 1984.

*Rufus L. Edmisten, Attorney General, by Robert G. Webb, Assistant Attorney General, for the State.*

*Jack E. Carter for defendant appellant.*

MITCHELL, Justice.

The defendant brings forward several assignments of error by which he contends that certain evidence was improperly admitted at trial. We find no reversible error.

The State's evidence tended to show that on July 2, 1980, Tommy Thompson was working the night shift as an attendant at Wright's Texaco station on Highway 301 in Fayetteville, North Carolina. Early on the morning of July 3, the station was discovered deserted. The cash register was empty. Thompson was discovered lying in a ditch along Highway 301 by sheriff's deputies around 7:00 p.m. that evening. Thompson was transported to a hospital and examined by Dr. Victor Keranen, a neurosurgeon. Keranen determined that Thompson had been shot in the back. A

few days later Keranen removed a bullet from the base of Thompson's neck. Due to the gunshot wound Thompson was rendered a permanent quadriplegic.

When Thompson was discovered, he told Fayetteville police officers Sessoms and Cook that he had been robbed and later shot. He gave a description of his two assailants and the car they were driving. The police sent out this information to various law enforcement agencies through the Police Information Network. On July 4, the Conway, South Carolina Police Department notified the Fayetteville officers that the car in question and two persons fitting the description of the robbers had been located in Conway. Sessoms and Cook traveled to Conway and met with officers there. Subsequently the car was searched and fifty-eight cartons of cigarettes were discovered in the trunk.

On the morning of July 5, the officers from Fayetteville met with the defendant. He was informed of his constitutional rights and signed a waiver indicating his willingness to discuss the case without the presence of an attorney. He stated that he and a friend, Ezekiel Hall, had left New York City a few days earlier and driven south. North of Richmond they stopped at a service station and after engaging the attendant in conversation, the defendant pulled out a gun and ordered him into the car. The defendant said that he and his companion took about $85.00 that was in the attendant's shirt pocket. After driving for about fifteen minutes, they stopped and the attendant was ordered out of the car. The defendant said he fired one shot over the attendant's head and the attendant ran. The defendant and Hall proceeded driving south.

The defendant stated that later they stopped at another service station. The defendant again talked with the attendant while he pumped gas. As the defendant went into the building to buy some wine, Hall pulled out a gun and announced that it was a stick-up. The defendant said he was surprised by Hall's action as they had not planned to rob the station. They took money from the cash register and from the attendant's pocket. The defendant then placed the attendant in the car, and he and Hall loaded a number of cartons of cigarettes into the car. After driving for ten minutes the defendant stopped the car, and Hall ordered the attendant to get out and run. The defendant stated that Hall fired

one shot and that Hall said that he had shot the man. They continued to drive south and eventually stopped in South Carolina where they stayed until they were apprehended.

After Sessoms and Cook concluded their questioning, they were given a Texaco credit card by Detective Smith of the Conway, South Carolina Police Department. The credit card bore the same number as the credit card receipt which was on top of a stack of receipts found at the Fayetteville service station.

While in the custody of the Fayetteville Police Department, the defendant called his sister in South Carolina and directed her to tell his brother to turn over a gun to Lieutenant Hawkins of the Florence, South Carolina Police Department. Fayetteville police later received a .38 caliber revolver from Lieutenant Hawkins. Ballistics tests showed that the bullet removed from Thompson was fired by the gun obtained from Lieutenant Hawkins. The State also introduced evidence that the defendant's fingerprints were found inside the service station.

The defendant presented no evidence and moved to dismiss the charges against him. The motion was denied, and the case was submitted to the jury. The defendant was found guilty of all charges.

[1] The defendant initially contends that it was error for the trial court to permit the State to introduce, in its entirety, the statement he made to Sessoms and Cook. The defendant moved to suppress part of the statement which referred to the first robbery claiming that it constituted evidence of a crime not charged and had no probative value as to the crimes charged.

For actions and proceedings commenced after July 1, 1984 the admissibility of evidence of crimes for which the defendant is not on trial is governed by Rule 404(b) of the North Carolina Rules of Evidence. Because this case was tried prior to the effective date of the evidence code, we must analyze the defendant's argument in light of the law existing at that time. At common law the general rule was that the State may not introduce evidence tending to show that a defendant has committed an independent offense even though it is of the same nature as the charged offense. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954); *State v. Moore,* 309 N.C. 102, 305 S.E. 2d 542 (1983). In *McClain,* Justice

Ervin writing for the Court enumerated eight exceptions to this general rule. The sixth exception is as follows:

> Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission.

*State v. McClain,* 240 N.C. at 176, 81 S.E. 2d at 367. Evidence offered to show the existence of a plan or scheme must be carefully examined to insure that it is relevant to show a common design and not merely to show the defendant's propensity to commit the offense charged. *State v. Martin,* 309 N.C. 465, 308 S.E. 2d 277 (1983). As we said in *State v. Moore,* 309 N.C. 102, 305 S.E. 2d 542 (1983), there must be some unusual facts present in both crimes or especially similar acts which would indicate that the same individual perpetrated both crimes.

In the present case examination of the circumstances surrounding the two robberies shows a number of similarities. During both robberies two men stopped at a service station for gas, engaged the attendant in casual conversation, robbed the attendant at gunpoint, placed the attendant in the car and drove for about fifteen minutes. They then ordered the attendant to get out of the car and run and fired a shot in his direction. These similarities tend to show a *modus operandi* or common scheme encompassing both crimes.

This case is quite similar to *State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735 (1972). In that case the defendant was found guilty of felony murder arising out of a grocery store robbery. The defendant had given a statement in which he confessed to actions which showed an intent to commit crimes similar to those for which he was on trial. We held that the evidence was "competent to show defendant's intent to commit a robbery *and as a part of the chain of circumstances leading up to the matter on trial.* It was also competent to properly develop the evidence in the case at bar." *Id.* at 89, 187 S.E. 2d at 740 (emphasis added). The same is true here. We hold that the trial court properly admitted the entire statement.

[2]  The defendant's next assignment of error is that the trial court improperly admitted the Texaco credit card obtained by Sessoms and Cook from the Conway Police Department. Sessoms testified that he received the credit card from Detective Enoch Smith after he and Cook had interviewed the defendant. The defendant points out that there was no evidence introduced which showed that the credit card was obtained from the defendant or his companion. The State contends that the fact that the credit card has the same number as the top credit card receipt found at the scene of the Fayetteville robbery establishes a relevant connection between the credit card and the crimes for which the defendant was on trial, and that the credit card was admissible for this reason. We disagree.

If the State had presented evidence tending to show that the defendant or his companion had ever possessed the card, it would have had probative value in the case. In fact, however, no such evidence was adduced. The State cites *State v. Jarrett*, 271 N.C. 576, 157 S.E. 2d 4 (1967) for the proposition that any object having a relevant connection to the case is admissible. Since no evidence tended to show possession of the credit card by the defendant or his companion, the fact that the numbers on the credit card and on the receipt are the same is not sufficient to support the connection the State suggests.

The defendant has failed to show, however, that the erroneous introduction of the credit card was prejudicial. The defendant confessed that he was present at the station at the time of the robbery. This was supported by the finding of the defendant's fingerprints at the crime scene. The defendant has not shown that there is a reasonable possibility that exclusion of evidence of the credit card would have changed the result at trial. Absent such a showing the defendant is not entitled to relief. N.C.G.S. 15A-1443(a); *State v. Galloway*, 304 N.C. 485, 284 S.E. 2d 509 (1981).

[3]  The defendant's final assignment of error concerns the admission into evidence of a fingerprint card. At the trial Bill Hess, a jailer with the Cumberland County Sheriff's Department, testified that he took the fingerprints of Johnny Hyman on July 7, 1980. Susan Griffin, a fingerprint technician with the City-County Bureau of Investigation, testified that latent fingerprints taken at

the crime scene matched the fingerprints of Johnny Hyman taken by Hess. The defendant argues that Hess never identified the defendant as being the same Johnny Hyman he fingerprinted on July 7. The defendant argues, therefore, that the State failed to show that the fingerprints obtained at the station matched those of the defendant.

Although Hess never expressly identified the defendant as the same Johnny Hyman he fingerprinted on July 7, 1980, his testimony that he fingerprinted Johnny Hyman permits a reasonable inference that he took the defendant's fingerprints. The failure of the State to adduce a more explicit identification of the defendant by Hess goes to the weight to be given the evidence, not to its admissibility or sufficiency. This assignment is without merit.

The defendant received a fair trial free from prejudicial error.

No error.

Justice VAUGHN took no part in the consideration or decision of this case.