STATE OF NORTH CAROLINA v. MICHAEL STREATH

No. 843SC375

(Filed 19 March 1985)

**1. Criminal Law § 34.5; Rape and Allied Offenses § 4.1— prior sexual misconduct — admissible**

In a prosecution for misdemeanor false imprisonment, indecent exposure, and assault on a female, two other incidents were sufficiently similar to be admitted where all three incidents occurred on commercial premises, particularly parking lots, in the same city and during business hours; each woman was accosted by defendant as she was entering her car; both other witnesses reported seeing defendant at other times cruising around the parking lot and sitting in his car with no apparent business; and all three positively identified defendant's car and defendant as the driver.

**2. Criminal Law § 34.8— evidence of general criminal plan—admissible**

In a prosecution for misdemeanor false imprisonment, indecent exposure, and assault on a female where defendant had offered the victim a ride after her car would not start, the trial court did not err by admitting the testimony of a service station attendant that a tire presented to him for repair had no leaks and that the air could easily be let out of a tire. There had been earlier testimony of a similar incident in which defendant had stopped a woman about to drive away and told her that she had a flat tire; the service station attendant's testimony was relevant to show defendant's general criminal plan to get women into his car. Moreover, the motion to strike came long after the alleged irrelevancy became apparent.

**3. False Imprisonment § 2.1; Obscenity § 5— evidence sufficient**

The evidence was sufficient to take the charges of false imprisonment and indecent exposure to the jury where the prosecuting witness testified that de-

fendant put his arm around her and threatened to kill her if she screamed, and that she definitely saw his private parts, despite other testimony that she had closed her eyes at one point. Defendant's placing of the witness's hand on his bare privates necessarily involved exposure, and the open parking lot of a business is obviously a public place. G.S. 14-190.9.

APPEAL by defendant from *Allsbrook, Judge.* Judgment entered 14 November 1983 in CRAVEN County Superior Court. Heard in the Court of Appeals 10 January 1985. Opinion filed by this court 5 February 1985, dismissing the appeal for failure to show derivative jurisdiction of the superior court, was vacated and remanded by the Supreme Court of North Carolina for determination on the merits by order entered 25 February 1985. Our prior opinion is accordingly withdrawn and we now consider this appeal on its merits.

Defendant appealed from misdemeanor convictions for false imprisonment, indecent exposure, and assault on a female. The evidence for the state tended to show that on the afternoon of 15 August 1982, the prosecuting witness had been shopping at a department store. She got into her car to go home, but her car would not start. Defendant offered her a ride home, and she accepted. Instead of taking her home, defendant drove to another business parking lot. There he stopped his car, and slid over to the prosecuting witness, placing his arm around her and locking the door. Defendant threatened to kill her if she screamed. Defendant fondled and kissed the prosecuting witness, then pulled out his penis and placed her hand on it. She did not consent to these actions.

The state also presented evidence of incidents involving defendant and two other women. All three identified defendant in court; corroborative identification testimony was presented by police officers.

Defendant testified and denied committing the crimes, stating he had been at home all afternoon on 15 August 1982; his wife corroborated this testimony. He presented evidence of his good character, as well as evidence of reform from alcoholism.

The jury returned verdicts of guilty, and defendant received sentences totaling four years, six months active imprisonment, the remainder suspended with certain conditions of probation. Defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General William F. Briley, for the State.*

*Beaman, Kellum & Stallings, P.A., by Edward Daniels Nelson, for defendant.*

WELLS, Judge.

**[1]** In his first two assignments of error, defendant challenges the admission of the testimony of the two other women concerning incidents involving defendant. At trial and on appeal, both sides argue the applicability of the rules governing the admission of evidence of other crimes, as set out by Justice Ervin in the landmark case of *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). We are not certain that the incidents at issue here involved criminal conduct. *McClain* deals exclusively with the admissibility of other offenses; nevertheless, its principles apply to non-criminal, but socially unacceptable, conduct. *State v. Freeman*, 303 N.C. 299, 278 S.E. 2d 207 (1981). We therefore analyze these assignments in light of *McClain* and its progeny.

In *McClain* Justice Ervin enunciated the general rule "that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." *Id.*

> The general rule rests on these cogent reasons: (1) "Logically, the commission of an independent offense is not proof in *itself* of the commission of another crime." . . . (2) Evidence of the commission by the accused of crimes unconnected with that for which he is being tried, *when offered by the State in chief*, violates the rule which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts, and is, therefore, inadmissible for that purpose. . . . (3) "Proof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence." . . . (4) "Furthermore, it is clear that evidence of other crimes compels the defendant *to meet charges of which the indictment gives him no information*,

confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it. The rule may be said to be an application of the principle that the evidence must be confined to the point in issue in the case on trial." . . .

*Id.* (Citations omitted) (emphasis added). Because of these highly prejudicial tendencies, the general rule excluding this evidence should be "strictly enforced," and evidence subjected to "rigid scrutiny" before admission. *Id.*

The general rule is subject to exceptions, however; those applicable here are as follows:

. . .

4. Where the accused *is not definitely identified* as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged. . . .

. . .

6. Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission. . . . Evidence of other crimes receivable under this exception is ordinarily admissible under the other exceptions which sanction the use of such evidence to show criminal intent, guilty knowledge, or identity.

*Id.* (Citations omitted) (emphasis added). As suggested above, the practical difference between the identity and common plan exceptions is small, such that they are frequently used almost interchangeably. *See State v. Hyman*, 312 N.C. 601, 324 S.E. 2d 264 (1985); *State v. Grace*, 287 N.C. 243, 213 S.E. 2d 717 (1975); *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974).

We read the language of identity exception, that makes it applicable *only* where the accused is not definitely identified, in conjunction with the danger (as recognized by Justice Ervin) of al-

lowing the state to introduce highly prejudicial character evidence, with tendency to surprise, in its case in chief, as suggesting that such evidence should *only* be allowed in as rebuttal evidence. Thus, unless the defendant presents alibi evidence, evidence of other crimes to show identity, either directly or indirectly (common plan), should not be admitted under *McClain*. In *State v. Thomas*, 310 N.C. 369, 312 S.E. 2d 458 (1984), the court stated that the identity of the defendant *must* be at issue in the case before other crimes evidence may be used to show identity, tending to support our reading. *See also State v. Moore*, 309 N.C. 102, 305 S.E. 2d 542 (1983) (properly presented "on rebuttal").

Nevertheless, the cases have overlooked this feature of *McClain*. Without inquiry as to actual relevance *at the time presented* to rebut alibi evidence, the supreme court has routinely approved evidence of other misconduct in the state's case in chief. *See, e.g., State v. Thomas, supra* (case in chief; after voir dire on identification); *State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437 (1981) (in chief; identification uncontroverted unless in unreported opening arguments), *cert. denied,* 456 U.S. 932 (1982); *State v. Bishop*, 293 N.C. 84, 235 S.E. 2d 214 (1977) (similar to *Williams*). The broadest statement of the supreme court's position appears in *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839 (1969). There the court recognized the general rule that other crimes evidence merely showing bad character or criminal disposition may not be introduced against one who has not testified in his or her own behalf. Nevertheless, a plea of not guilty controverts every material allegation in the indictment, including the accused's identity as the perpetrator, and therefore the other crimes evidence was properly admitted, even though the defendant presented no evidence. *Id.*

The liberal application of the *McClain* exceptions tends to undermine the policy and usefulness of the general rule, and cast a heavy burden on the defense. *See State v. May*, 292 N.C. 644, 235 S.E. 2d 178 (Exum, J., dissenting), *cert. denied,* 434 U.S. 928 (1977); W. Geimer, *The Law of Homicide in North Carolina: Brand New Cart Before Tired Old Horse,* 19 Wake Forest L. Rev. 331, 359-63 (1983). We note that recent decisions of the supreme court have demonstrated willingness to undertake stricter enforcement of the general *McClain* rule. *See State v. Hyman, supra* (reciting policy of strict enforcement); *State v. Willis*, 309 N.C. 451, 306

S.E. 2d 779 (1983) (disapproving liberal admission in drug case); *State v. Moore, supra* (applying strict policy). However, no change has occurred in the operative framework of evidentiary rules applicable to this case. Therefore we must conclude that the state could properly present this evidence of other misconduct in its case in chief if it fit the *McClain* exceptions.

Evidence of other misconduct is admissible under the identity exception upon a showing of unusual facts present in both acts, or particularly similar acts which tend to show that the same person committed both. *State v. Thomas, supra; State v. Moore, supra.* Applying this test, in light of the facts in *Thomas* and *Moore*, we conclude that the incidents in question here are sufficiently similar that the evidence was properly admitted. All three incidents occurred on commercial premises, particularly parking lots, in the same city and during business hours. Each woman was accosted by defendant as she was entering her car. Both other witnesses reported seeing him at other times cruising around the parking lot and sitting in his car with no apparent business. All three positively identified his car and identified defendant as the driver. Therefore defendant's first two assignments must be overruled.

[2] Defendant also challenges the admission of testimony of a service station attendant. This evidence followed testimony of one of the other women that she got into her car and was about to drive away when defendant stopped her and told her she had a flat tire. The attendant testified that the woman later brought the tire to him for repair and he discovered no leaks, despite extensive experience in fixing tires. The attendant also described the ease with which air can be let out of a tire. This evidence was relevant, and thus properly admitted in the discretion of the court, to show defendant's general criminal plan to get women into his car. We note that defendant's motion to strike this testimony came long after the alleged irrelevancy became apparent, and the motion thus could properly be denied on that ground. *See State v. Lewis*, 281 N.C. 564, 189 S.E. 2d 216 (motion after intervening question too late), *cert. denied*, 409 U.S. 1046 (1972).

[3] Finally, defendant assigns error to the denial of various motions to dismiss and for mistrial. To the extent that these

assignments are based on the admission of evidence of other incidents, our previous discussion resolves them against defendant. On a motion to dismiss for insufficient evidence, the evidence must be considered in the light most favorable to the state, together with all favorable inferences; defendant's evidence is not considered unless favorable to the state. *State v. Earnhardt,* 307 N.C. 62, 296 S.E. 2d 649 (1982). Applying this standard, we conclude that defendant's motions were properly denied.

Defendant contends that the false imprisonment charge should have been dismissed because of insufficient evidence of restraint against the will of the victim. It is not necessary that the state show actual force; threat or even fraud resulting in coerced consent may suffice. *State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577 (1971). The prosecuting witness testified that defendant put his arm around her and threatened to kill her if she screamed, and that she did not consent to his actions. This sufficed to take the case to the jury. The fact that she originally entered his car voluntarily does not affect our consideration; it is the coerced restraint against leaving that constitutes the criminal conduct. *Id.; see also State v. Wilson,* 73 N.C. App. 398, --- S.E. 2d --- (1985).

Defendant argues that the state did not present sufficient proof of indecent exposure. The elements of that offense are (1) willful exposure of private parts, (2) in a public place, (3) in the presence of at least one person of the opposite sex. N.C. Gen. Stat. § 14-190.9 (1981); *State v. Robert King,* 285 N.C. 305, 204 S.E. 2d 667 (1974). *State v. Charlie King,* 268 N.C. 711, 151 S.E. 2d 566 (1966) (per curiam). Defendant contends that the prosecuting witness admitted she had her eyes closed at one point, and therefore no willful exposure took place. The prosecuting witness testified elsewhere that she definitely saw his private parts, however. Defendant's placing of the witness' hand on his bare privates, whether seen or not, necessarily involved exposure. An open parking lot of a business, where these events occurred, is obviously a public place. Intentional exposure while sitting in an automobile in a public place constitutes exposure in a public place. *State v. Charlie King, supra.* At least one person of the opposite sex was present. This charge was therefore properly submitted to the jury.

Defendant received a fair trial, free of prejudicial error.

No error.

Judges ARNOLD and PARKER concur.