STATE OF NORTH CAROLINA v. WILLIE JUNIOR JONES

No. 3

(Filed 31 January 1977)

**1. Criminal Law § 93— rebuttal testimony**

In this homicide prosecution, a State's witness was properly allowed to give testimony on rebuttal which contradicted defendant's evidence as to his whereabouts on the night of the crime and that there were no bloodstains on the sweater he wore that night; moreover, such testimony would have been admissible had it not contradicted defendant's evidence, since the order of proof is a matter completely within the discretion of the trial judge.

**2. Criminal Law § 71— blood on defendant's shirt — lay testimony — shorthand statement of fact**

A witness's testimony that he saw blood on defendant's shirt was admissible as a shorthand statement of fact.

**3. Criminal Law § 114— recapitulation of testimony — no expression of opinion**

Trial court's recapitulation of a witness's testimony that defendant "was wearing a white turtleneck sweater and had blood on his shirt" did not constitute a comment on the evidence in violation of G.S. 1-180.

**4. Homicide § 26— instructions — duty to find guilt of second degree murder**

Where all the evidence tends to show a killing resulting from the intentional use of a deadly weapon, and there is no evidence which will support a finding that the killing was done in the heat of passion on sudden and sufficient provocation or that defendant used excessive force while fighting in self-defense, the trial judge is required to instruct the jury that if they are satisfied beyond a reasonable doubt that defendant intentionally inflicted a wound upon the decedent with a deadly weapon which proximately caused his death it would be their duty to return a verdict of guilty of murder in the second degree.

**5. Homicide § 30— first degree murder — failure to submit manslaughter**

The trial court in a prosecution for first degree murder did not err in failing to submit the issue of defendant's guilt of manslaughter where defendant's defense was alibi and all the evidence for the State tended to show that defendant went to the home of the deceased for the purpose of collecting money from him, and that when defendant ascertained deceased had no money he deliberately and intentionally killed him with knives and a heavy shovel, all deadly weapons, after having stated his intention to do so.

APPEAL by defendant under G.S. 7A-27(a) from *Preston, J.,* at the 25 August 1975 Session, DURHAM Superior Court.

Defendant was tried upon a bill of indictment (drawn under G.S. 15-144) which charged him with the first degree murder of Willis Daniels. The trial was conducted in the manner prescribed for a capital case. The State's evidence tended to establish the following facts:

Helen Beasley's apartment in Durham was the scene of frequent gatherings by young people. Around 10:00 p.m. on 4 January 1975 Billy Perry, age 14, was at this apartment. There he was joined by defendant Willie Jones. After a brief conversation they decided to go to a nightclub. Defendant told Perry that an elderly man, Mr. Willis Daniels, owed him money, and the two left to go to his home. En route Perry complained of being cold and defendant gave him his jacket.

At Daniels' dwelling, when he answered defendant's knock, defendant grabbed him by the neck, choked him, and said, "Give me my money." Daniels said he had no money. Whereupon defendant pushed him into a bedroom, and Perry heard him tell Daniels to remove his pants. Defendant soon came out and announced that he would have to kill Daniels. He procured a kitchen knife from the back of the house and reentered the room where Daniels was. He returned shortly thereafter laughing, and he told Perry the knife had broken. Defendant went to the back of the house again, got another knife, and reentered the room where he had left Daniels. Perry heard the second knife hit the floor, and defendant again emerged laughing. He told Perry the other knife had broken also. This time he picked up a short-handled shovel (State's Exhibit 9) and said, "That won't break." He then reentered the bedroom where Perry saw him raise the shovel and hit Daniels on the head. Perry then "took off running up the street."

Defendant came out of the house and called Perry to come back. The two then crossed a small branch and went into some bushes where defendant threw the shovel away. A few minutes later the two separated. Perry returned to Mrs. Beasley's apartment, left defendant's jacket there, and then went home. About ten days later police officers came to see him. He gave them a statement and then took them to the area where defendant had discarded the shovel. After some "looking around," they retrieved the shovel.

About noon on 5 January 1975 Daniels' body was discovered by Ben Hawkins, a neighbor who had become concerned

about him. He found the front door ajar and immediately observed Daniels lying partly on the bed, "his head full of blood." After a brief look he called the police.

Upon arrival the police found Daniels lying on his back, nude from the waist down and hanging off the bed. The head had been badly battered. One eyeball was out of the socket; two teeth had been knocked out and were lying beside him on the bed; and there were several lacerations about the face. The room was "pretty well torn up." The Durham County medical examiner was summoned, and he concluded that Daniels had then been dead from five to seven hours. The pathologist who performed the autopsy testified that the wounds on Daniels' body had been inflicted by both sharp and blunt instruments, and they were consistent with blows from a shovel and cuts with a knife. It was his opinion that the blow which caused Daniels' death was the one which knocked the eye out of the socket and lacerated the nose. Blood from this wound had flowed through the trachea and into the lungs. A blood test revealed that at the time of his death Daniels' blood alcohol level was 260 milligrams percent. He was, therefore, intoxicated when he died.

The defendant did not testify. However, he offered evidence tending to show that from 8:00 a.m. on 4 January 1975 until 1:30 a.m. on 5 January 1975 he was with his older brother, James Jones; that they started drinking about 8:15 and that during the day they consumed two 6-packs of beer and three fifths of wine. From 9:00 p.m. until 1:30 a.m. they were both at the home of their mother, Mrs. Margie Jones, where they played cards and drank wine. At 1:30 a.m. James "walked" defendant home and saw him enter his residence. Mrs. Vanessa Jones, defendant's wife, testified that she had been in bed watching television when defendant came home just before 2:00 a.m. on 5 January 1975; that he was so "high" he went to sleep as soon as he undressed and "hit the bed"; that he slept beside her until 8:00 a.m. She further said that on the night of 4-5 January, 1975 defendant was wearing a white turtleneck sweater which she washed later in the week, and at no time did she see any blood on it.

At the close of defendant's evidence the State called Robert Johnson as a rebuttal witness. He testified that during the early morning hours of 5 January 1975, about 12:20 a.m., he

went to Helen Beasley's apartment, where he saw defendant, who was then wearing a white turtleneck sweater. He saw defendant's shirt and noticed that there were blood stains on it. At that time some other poeple, including Vanessa Jones, defendant's wife, were also at Mrs. Beasley's apartment. Defendant left the apartment before his wife, who stayed for about a half hour longer.

The court instructed the jury it might return one of three verdicts: guilty of murder in the first degree, guilty of murder in the second degree, or not guilty. The jury's verdict was "guilty of murder in the second degree." From the judgment that he be imprisoned for the term of his natural life, defendant appealed to the Supreme Court. Defendant's appeal was not perfected within the time required by law. His petition for certiorari was allowed on 29 January 1976. The case was docketed in this Court on the 13th of April 1976 and argued on 14 September 1976.

*Attorney General Rufus L. Edmisten and Assistant Attorney General William Woodward Webb for the State.*

*William A. Graham III for defendant appellant.*

SHARP, Chief Justice.

[1] Defendant brings forward four assignments of error. Three relates to the testimony of Robert Johnson, a witness called by the State after the close of defendant's evidence. Defendant argues first that Johnson's evidence was inadmissible because it did not contradict the testimony of any defense witness. In making this contention defendant misperceives both the effect of Johnson's testimony and the law governing the order of proof. His entire defense was based on evidence tending to establish an alibi. In support of his contention that he was elsewhere when Mr. Daniels was killed, he called as a witness his brother, James Junior Jones, who testified that he and defendant were at James's residence throughout the night of 4 January 1975 and until 1:30 on the morning of January 5th when he escorted defendant to his door and saw him enter his own house. Johnson, on the other hand, testified that he saw defendant at Mrs. Beasley's apartment around 12:20 a.m. on January 5th.

Johnson's evidence also tended to contradict defendant's evidence in another respect. Vanessa Jones testified that de-

fendant wore a white turtleneck sweater and blue jeans that night and that the sweater was not bloodstained. Johnson testified that when he saw defendant he was wearing a white turtleneck sweater and dark blue pants, and that the "shirt" was bloodstained. (It is not clear from the record whether Johnson meant that the turtleneck or a separate garment was bloodstained.) Thus, Johnson's testimony did contradict defense witnesses and, as such, was properly admitted on rebuttal. However, the order in which Johnson testified is irrelevant to this appeal.

The order of proof and presentation of witnesses is a matter completely within the discretionary control of the trial judge. "The court, to attain the ends of justice, may in its discretion allow the examination of witnesses at any stage of the trial." *State v. King*, 84 N.C. 737, 741 (1881). *Accord, In re Westover Canal*, 230 N.C. 91, 52 S.E. 2d 225 (1949); *State v. Strickland*, 229 N.C. 201, 49 S.E. 2d 469 (1948); *Miller v. Greenwood*, 218 N.C. 146, 150, 10 S.E. 2d 708, 710 (1940); 4 Strong's N. C. Index 3d *Criminal Law* § 93 (1976). There was no abuse of judicial discretion in this case.

Defendant's second contention is that in allowing Johnson to testify he saw blood on defendant's shirt the judge erroneously permitted him to state a conclusion based on facts not within his personal knowledge. This contention is also without merit.

[2] The average layman is familiar with bloodstains; they are a part of common experience and knowledge. When a witness says he saw blood he states an opinion based on his observations, and most likely it would be exceedingly difficult for him to describe the details which led him to conclude that the stains were blood. When he testifies they looked like blood to him he has stated his conception. "This Court has long held that a witness may state the 'instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time.' Such statements are usually referred to as shorthand statements of facts." *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E. 2d 178, 187 (1975). *See* 1 Stansbury's North Carolina Evidence § 125 (Brandis rev. ed. 1973). The Court did not err in admitting this testimony.

**[3]**  Nor did the judge err when, in recapitulating Johnson's evidence, he stated that the witness testified, "at the time he [Johnson] saw him [defendant] he was wearing a white turtleneck sweater and had blood on his shirt." The judge did no more than repeat what Johnson had said. Such a summary of testimony was not a comment on the evidence within the meaning of G.S. 1-180.

Defendant's first three assignments of error are overruled.

In his charge the trial judge instructed the jury to return one of three verdicts: Guilty of murder in the first degree, guilty of murder in the second degree, or not guilty. Defendant's final assignment of error is that the judge erred in failing to submit the issue of his guilt of manslaughter. This assignment has no merit.

**[4]**  Murder in the second degree, the crime for which defendant was convicted, is the unlawful killing of a human being with malice but without premeditation and deliberation. Manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Cousins,* 289 N.C. 540, 223 S.E. 2d 338 (1976); *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Kea,* 256 N.C. 492, 124 S.E. 2d 174 (1962). Where all the evidence tends to show a killing resulting from the intentional use of a deadly weapon, and there is no evidence which will support a finding that the killing was done in the heat of passion on sudden and sufficient provocation or that the defendant used excessive force while fighting in self defense, the law of this State requires the trial judge to instruct the jury that if they are satisfied beyond a reasonable doubt that defendant intentionally inflicted a wound upon the decedent with a deadly weapon which proximately caused his death it would be their duty to return a verdict of guilty of murder in the second degree. *State v. Hankerson,* 288 N.C. 632, 651, 220 S.E. 2d 575, 589 (1975).

**[5]**  In this case all the evidence for the State tended to show that defendant went to the home of the deceased, an elderly black man, for the purpose of collecting money from him; that when defendant ascertained Daniels had no money he deliberately and intentionally killed him with knives and a heavy shovel, all deadly weapons, after having stated his intention to do so. There was not a scintilla of evidence that defendant acted either in the heat of passion on sudden provocation or in self

defense. Defendant's defense was an alibi. Neither the State nor defendant adduced any evidence which would support a verdict of manslaughter, and it would have been improper for the court to have submitted the issue. *See State v. Griffin,* 280 N.C. 142, 185 S.E. 2d 149 (1971) ; *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971). "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. *The presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 159, 84 S.E. 2d 545, 547 (1954). None of the evidence adduced would support or allow a submission of the charge of manslaughter to the jury.

Defendant has had a fair trial, free of prejudicial error. The State's evidence made out against him a brutal case of murder in the first degree. G.S. 14-17 (Cum. Supp. 1975) ; *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487 (1970). A lenient jury, although rejecting his evidence of alibi, convicted him of the lesser offense of second degree murder. He has no cause to complain.

No error.