STATE OF NORTH CAROLINA v. ERIC JEROME MOORE

No. 65A83

(Filed 9 August 1983)

1. **Criminal Law § 34— evidence of another crime committed by defendant inadmissible—prejudicial error**

   In a prosecution for a first degree sexual offense, attempted first degree rape and robbery with a dangerous weapon, the trial court committed prejudicial error by allowing into evidence the testimony of a rape victim who testified that defendant had raped her approximately two months after the attempted rape for which he was being tried. The differences in the two attacks were significant in that one attack occurred during the day at a business while the other victim was attacked at night in her apartment; one victim had been repeatedly threatened while the other attack did not involve any threats; one victim was continuously brutally slapped and her assailant attempted to stab her while the other victim was never struck; one victim was verbally abused while the other victim was not; and one attack involved repeated rapes, acts of oral sex and attempted anal sex while the other attack consisted of one act of oral sex and an attempted rape.

2. **Criminal Law § 50.2— shorthand statement of fact—properly admitted**

   The trial court properly allowed a prosecuting witness in a prosecution for a first degree sexual offense and armed robbery to testify, over objection, that no one was in the building other than she and the defendant. The prosecuting

State v. Moore

witness's answer could be referred to as a shorthand statement of fact instead of an impermissible opinion.

Justice MEYER dissenting.

Chief Justice BRANCH and Justice COPELAND join in this dissent.

BEFORE *Washington, Judge,* at the 13 September 1982 Criminal Session of Superior Court, GUILFORD County, the defendant was convicted of three separate counts. He received a life sentence for first degree sexual offense, six years for attempted first degree rape and fourteen years for robbery with a dangerous weapon.

The defendant appealed his life sentence directly to the Supreme Court as a matter of right. His motion to bypass the Court of Appeals on the other sentences was allowed by the Supreme Court on 9 March 1983.

*Rufus L. Edmisten, Attorney General, by Richard L. Kucharski, Assistant Attorney General, and David E. Broome, Jr., Associate Attorney, for the State.*

*Pinkney J. Moses, for defendant appellant.*

MITCHELL, Justice.

[1] The principal question presented by the defendant's appeal is whether the trial court committed prejudicial error by allowing the State to introduce evidence that the defendant committed a sexual crime against another individual subsequent to the crime for which he was being tried. We hold that the evidence was erroneously admitted and that its admission prejudiced the defendant and requires a new trial.

The State introduced evidence which tended to show that Lisa Burton was assaulted on 19 February 1982. Burton testified that she was working at the Old Arlington Dry Goods Store in Greensboro on that date. At approximately 1:00 p.m. she was alone in the store with the front and back doors locked. At that time she unlocked the back door and went outside to walk her dog. While outside she was approached by a man she later identified as the defendant. He asked her about the store and she tried to get him to leave and come back when the store was open. He then showed her a magazine page which contained a picture of

a naked woman. Burton tried to get back into the store and lock the door, but the defendant forced his way in before she could close the door. She tried to get him to leave, but he told her that "he was going to do it and that [she] wanted it." He grabbed her and, as she tried to push him away, he produced a long kitchen knife with a wooden handle. The defendant then forced Burton into the bathroom, pulled her pants down around her ankles and ordered her to lie on the floor. He then told her not to move and left the bathroom, closing the door and "clicking" the doorknob from the outside. Burton was not sure whether the door could be locked from the outside.

After a brief time, the defendant returned to the bathroom with the knife still in his hand. The defendant lowered his pants and then performed cunnilingus on Burton against her will. He then rubbed his genitals against her genitals until he ejaculated. He did not penetrate Burton. He then wiped Burton and the floor with a hand towel. He ordered her to get dressed and, according to Burton, said "I didn't hurt you, I was gentle with you." He then left the bathroom, closing the door behind him. Burton heard him moving about in the store and waited fifteen to twenty minutes before she left the bathroom and ran to a nearby office and called the police. She left the bathroom at approximately 1:30 p.m.

Burton testified that prior to the attack her handbag with her wallet was on a stool behind the cashier's counter at the front of the store. She returned to the store with the police about seventy minutes after the attack. She found her purse but her wallet which contained thirty dollars and some credit cards was missing.

Burton identified the defendant in court. Previously she had picked a photograph of the defendant out of approximately fifty photographs that she was shown. She also had identified the defendant from among thirty to forty men seated in the Guilford County Courthouse on 24 May 1982.

Howard Stone, a witness for the State, testified that he worked doing odd jobs for the owner of the Old Arlington Dry Goods Store. On 19 February 1982, he was putting the garbage cans out behind the store when he saw the defendant coming out of the store. He had seen the defendant three or four times before near the store and had previously spoken to him. The

defendant saw Stone and left quickly without speaking to him. Stone identified the defendant in court and from a photographic lineup.

Janette Faye Davenport also testified for the State. She testified that she was living alone in an apartment in Greensboro on 16 April 1982. At approximately 1:00 a.m. on that morning, Davenport was awakened by someone in her bedroom. It was dark but she could see a figure standing over her and the man told her to take off her clothes. She later identified this man as the defendant. After she removed her night clothes the man forced her to perform fellatio. He then tried to have intercourse with her but was unable to penetrate her. He forced her to perform fellatio again after which he succeeded in having intercourse with Davenport. He then unsuccessfully attempted anal intercourse. At one point the assailant grabbed Davenport and something on his knuckle cut her neck. The attacker raped her again and forced her to perform fellatio a third time until he ejaculated.

During the entire attack the man brutally slapped Davenport and used obscenities to verbally abuse her. He repeatedly told her that he was going to kill her before he left, although she had not yet seen a weapon. He also asked her for money and she told him that she had seven or eight dollars, but he apparently did not take any money.

After the attack Davenport tried to run out of the apartment. The attacker caught her in the kitchen and the two fought. The attacker shoved her back onto the dining room table. Davenport managed to kick the front door open and began screaming, but he pulled her back into the apartment. He again said that he was going to kill her and, for the first time, she saw that he had a knife. He made a motion with the knife which, according to Davenport, would have stabbed her had she not moved. She stopped struggling and he again said he would kill her before he left. Somehow she was able to get free. She ran out the front door and banged on a neighbor's window yelling for someone to help her. As a neighbor turned on her light, the attacker walked out of Davenport's apartment and said something to the effect of "I'll damn well help you."

The testimony of the defendant and his witnesses tended to show that he was not in Greensboro on 19 February 1982 and that

he did not attack Burton. The defendant stated that he was living in Winston-Salem and that he had never seen Howard Stone before the trial.

The testimony of Davenport was offered by the State for the sole purpose of identifying the defendant as the man who attacked Burton. The evidence was introduced over the defendant's objection and after arguments by both the defendant and the State. The defendant contends that the admission of Davenport's testimony into evidence was prejudicial error. We agree.

The general rule is that the State may not present evidence that the defendant committed other crimes distinct, independent, or separate from the offense for which he is being tried. *State v. Freeman*, 303 N.C. 299, 278 S.E. 2d 207 (1981); *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). "This is true even though the other offense is of the same nature as the crime charged." *State v. McClain*, 240 N.C. at 173, 81 S.E. 2d at 365.

In *McClain*, this Court, through Justice Ervin, enumerated several exceptions to this general rule. The fourth exception, apparently relied upon by the State to support the admissibility of Davenport's testimony, is as follows:

> Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged.

*State v. McClain*, 240 N.C. at 175, 81 S.E. 2d at 367.

Assuming, *arguendo*, that the defendant was not definitely identified as the perpetrator of the crime charged, the circumstances of the two crimes must still be such as to "tend to show that the crime charged and another offense were committed by the same person" before the evidence will be admissible. *Id.* Therefore, before this exception can be applied, there must be shown some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes. *See e.g., State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982); *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976); *State v. McClain*, 282 N.C. 357, 193 S.E. 2d 108 (1972). To

allow the admission of evidence of other crimes without such a showing of similarities would defeat the purpose of the general rule of exclusion. *See State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954).

In the present case, while there were some similarities between the two crimes, the differences were more numerous and of greater significance. The two attacks were similar in that both were sexual assaults on women who were approximately the same age, twenty-seven years old and thirty-one years old. The age of the victims in this case is not as significant as it could be if the victims were particularly young or old. *See State v. Leggett,* 305 N.C. 213, 287 S.E. 2d 832 (1982). Both crimes involved oral sex, although one was fellatio and the other was cunnilingus. In each attack the assailant displayed a knife. While both attacks occurred in Greensboro within a two-month period, time and place are more relevant if the crimes occur within a short period of each other and a closer proximity than simply the same city. *See State v. Thompson,* 290 N.C. 431, 226 S.E. 2d 487 (1976); *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974).

While there are some similarities as outlined above, the differences in the two attacks are more significant. One attack occurred during the day at a business while the other victim was attacked at night in her apartment. The Davenport attacker repeatedly threatened to kill the victim before he left while the attack on Burton did not involve any threats. Davenport was continually brutally slapped and her assailant attempted to stab her. Burton was never struck by her attacker and, although he held a knife, he did not use the weapon in any manner other than to display it to her. In the attack on Davenport, the assailant continually used profanity and verbally abused the victim. In the attack for which the defendant was being tried, the assailant used no such language or verbal abuse. The attack on Davenport involved repeated rapes, acts of oral sex and attempted anal sex. The attack on Burton consisted of one act of oral sex and an attempted rape. The attack on Davenport culminated in a fight during which her assailant tried to stab her and concluded when she broke free and ran naked from her house. Burton's attack culminated with the assailant calmly telling her that he had not hurt her, asking her not to tell the police and leaving her in the unlocked bathroom.

While this Court has been "very liberal in admitting evidence of similar sex crimes," *State v. Greene,* 294 N.C. 418, 423, 241 S.E. 2d 662, 665 (1978), the evidence cannot be admitted unless it falls within an exception to the general rule of exclusion. "Since evidence of other crimes is likely to have a prejudicial effect on the fundamental right of the accused to a fair trial, the general rule of exclusion should be strictly enforced in all cases where it is applicable." *State v. McClain,* 240 N.C. at 176, 81 S.E. 2d at 368. In light of the limited similarities between the two crimes, we hold that the evidence of the attack on Davenport should have been excluded.

Having determined that the evidence was improperly admitted, we must now examine whether the error in admitting the evidence was prejudicial to the defendant. G.S. 15A-1443(a), which is controlling on this issue, provides:

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

The two crimes in the case *sub judice* did not present such distinctly similar facts or actions by the assailants as to provide a reasonable inference that the same person committed both offenses. Given the graphic description by Davenport of an attack far more brutal than the crime for which the defendant was being tried, it would appear that the testimony tended "to inflame the minds of the jurors against [the defendant] and to preclude that calm and impartial consideration of [his] case to which [he] was entitled." *State v. McClain,* 240 N.C. at 177, 81 S.E. 2d at 368. We hold, therefore, as we did in *McClain,* that because of the prejudicial effect of the error the defendant is entitled to a new trial. *See also State v. Austin,* 285 N.C. 364, 204 S.E. 2d 675 (1974); *State v. Whitney,* 26 N.C. App. 460, 216 S.E. 2d 439 (1975).

[2]  One final issue raised by the defendant on appeal needs to be addressed. The defendant assigns as error the ruling by the trial

court that allowed Burton to testify, over objection, that no one was in the building other than she and the defendant. We hold that this assignment is without merit.

In regard to the missing wallet and the charge of robbery with a dangerous weapon, Burton was asked, "Was there anyone else in there besides you and the defendant?" Over the defendant's objection, she answered that there was not. The defendant contends that this question was improper because it required the witness to give an impermissible opinion. As we stated in *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E. 2d 178, 187 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3210 (1976):

> This Court has long held that a witness may state the "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." Such statements are usually referred to as shorthand statement of facts.

(Quoting *State v. Skeen*, 182 N.C. 844, 845-46, 109 S.E. 71, 72 (1921)). *See also State v. Jones*, 291 N.C. 681, 231 S.E. 2d 252 (1977); *State v. Nichols*, 268 N.C. 152, 150 S.E. 2d 21 (1966). The trial court did not err by allowing Burton's testimony.

Based on the court's prejudicial error in allowing the State to present evidence that the defendant committed a subsequent unrelated crime, we order that the defendant be given a new trial.

New trial.

Justice MEYER dissenting.

I respectfully dissent from the majority's conclusion that defendant is entitled to a new trial for error in allowing Ms. Davenport to testify that defendant committed a similar sexual attack upon her.

The majority's analysis on this issue acknowledges that "this Court has been 'very liberal in admitting evidence of similar sex crimes,' *State v. Greene*, 294 N.C. 418, 423, 241 S.E. 2d 662, 665 (1978)." Having thus so stated, and having, of necessity, admitted

to numerous striking *similarities* between the two crimes, the majority chooses in unprecedented fashion to gloss over these similarities and to concentrate rather on the *differences* in the two attacks, which differences it characterizes as "significant." Our case law does not support this method of analysis.

Admittedly, an analysis to determine similarities necessarily entails a consideration of differences. Under our settled case law the focus is on the *similarity* of circumstances of the two crimes which *tends* to identify the defendant as the perpetrator of the crime for which he is being tried. If the evidence of the circumstances of the other crime or act reveals both striking similarities and "significant differences," is it admissible? The answer is "yes," *if,* on balance, the similarities tend to identify the defendant as the perpetrator of the crime which is the subject of the trial.

In *Greene,* defendant picked up the prosecuting witness, Ms. Rutherford, on the street, took her to a wooded area and raped her. Earlier that same day defendant, posing as a painter, gained entrance to the apartment of Ms. Elerick, forced her at knifepoint to remove her clothes, and attempted sexual intercourse with her. This Court held that:

> Since both victims described defendant's physical appearance and the clothing that he wore on the afternoon of 3 May 1976, evidence of the offenses committed against Ms. Rutherford would have been admissible in the case charging assault with intent to commit rape upon Mrs. Elerick for the purpose of establishing defendant's identity as her assailant.

*Id.* at 423, 241 S.E. 2d at 665.

In *State v. Freeman,* 303 N.C. 299, 278 S.E. 2d 207 (1981), the prosecuting witness, Ms. Whitman, discovered the defendant standing nude in her bathroom. He committed several acts of oral sex upon her, raped her, and masturbated in front of her. Defendant challenged the admissibility of testimony by another witness, Ms. Walters, that defendant had been seen standing naked behind her house on more than forty occasions and that he would sometimes "abuse himself" in her presence. Justice Exum, writing for the majority, held that this evidence was admissible:

We think the testimony of Ms. Walters was probative of this question. It did tend to identify defendant as the perpetrator of the crimes against Ms. Whitman. This is so because the circumstances of the crimes charged and those of the offenses observed by Ms. Walters tend to show that both were committed by the same person. The victim, Ms. Whitman, testified that when she first observed her assailant he was standing naked in her bathroom. After he raped her he masturbated in her presence. Ms. Walters testified that she had on numerous occasions observed defendant on her premises in her presence standing naked and that on some of these occasions defendant would masturbate.

*Id.* at 302, 278 S.E. 2d at 209.

Had the Court in *Freeman* adopted today's majority's new test of "significant differences" a different result would have been compelled. However, the *Freeman* Court properly emphasized the similarities between the two crimes, *i.e.*, that defendant on both occasions appeared naked and masturbated.

In *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982), defendant came out of a parking deck, accosted the eighteen year old prosecuting witness, Ms. Martin, on the street. Threatening her with a knife, he dragged Ms. Martin into an alley. He demanded that she "give [him] what [he] want[ed]," and that she have oral sex with him. Defendant lay on top of Ms. Martin, tried unsuccessfully to insert his penis into her vagina, and finally reached a climax while lying on top of her. A month after this incident, defendant came out from a parking lot and accosted fifteen year old Porshe Mosely on a street, dragged her behind some apartments and, holding a knife to her throat, exposed his penis, demanding that "if [she] didn't give him some he was going to kill [her]." Defendant then began dragging Ms. Mosely to a nearby church field at which point she called to a friend for help and escaped. This Court, in an opinion authored by Justice Mitchell, held that Ms. Mosely's testimony was admissible for purposes of identifying the defendant as the perpetrator of the attack against Ms. Martin, noting the following similarities: (1) In each case the perpetrator came from a parking area in the vicinity of a church and grabbed a teenage woman on the public streets; (2) in each case the perpetrator held a knife on the victim and proceeded to

drag her to a secluded area from which he had more than one route of escape; and (3) the manner in which the perpetrator in each situation exposed himself to the young woman while holding a knife on her as well as the manner of his demands that they commit sexual acts with him were substantially the same. *Id.* at 224, 287 S.E. 2d at 839.[1] The Court did not note differences, significant or otherwise, between the two attacks.

In the case *sub judice*, not only are the similarities between the two crimes more numerous than in *Greene*, *Freeman*, or *Leggett*, but they point unerringly to the fact that both crimes were committed by the same person. It is to these similarities, both in number and significance, to which this Court should more properly refer in determining whether Ms. Davenport's testimony was properly admissible:

(1) The victims in both attacks were approximately the same age—i.e., Lisa Burton was 27 years old at the time of trial, and Ms. Davenport was 31 years old at the time of trial.

(2) The sexual attacks on both women occurred inside buildings which were under the control of the victims, in which the victims were alone at the time of the attacks, and in which the attacker entered without invitation.

(3) In both attacks, the attacker wanted or needed and, therefore, forced the victim to engage in oral sex prior to intercourse or attempted intercourse.

(4) In both attacks, the attacker used a knife as a weapon to gain control of the victims after the victims pushed him away.

(5) In both attacks, the attacker instilled the fear of death in his victims.

(6) In both attacks, the attacker sought the victims' money.

(7) Both attacks occurred in Greensboro within less than a two month period.

---

1. While the defendant in *Leggett* later admitted from the stand that he was then serving a sentence for the other crime, that circumstance was not considered in determining the admissibility of Ms. Mosely's testimony.

I would vote to affirm defendant's conviction.

Chief Justice BRANCH and Justice COPELAND join in this dissent.