STATE OF NORTH CAROLINA v. ERNEST JAMES McDOWELL, JR.

No. 8810SC773

(Filed 4 April 1989)

1. **Criminal Law § 34.5 — subsequent crime — admissibility to show identity**

Evidence of defendant's participation in a robbery two days after the robbery for which he was being tried was properly admitted to identify defendant as a perpetrator of the robbery in question where the evidence tended to show that both robberies were committed by the same persons in that the male victims in both robberies were made to disrobe and were tied up with duct tape; the robbers in both cases took money and jewelry, asked about weapons, and caused a telephone to be ripped from the wall; and one of the gunmen in each of the robberies wielded a machine gun. N.C.G.S. § 8C-1, Rule 404(b).

2. 'Criminal Law § 46.1 — flight of defendant — admission to show how police obtained stolen property — harmless error

Evidence that defendant attempted to flee from the arresting officer was improperly admitted in an armed robbery case to show how defendant and property taken in the robbery came into police custody because its probative value was outweighed by the danger of unfair prejudice. However, defendant failed to show that he was prejudiced by the admission of this evidence. N.C.G.S. § 8C-1, Rule 403.

APPEAL by defendant from *F. Gordon Battle, Judge.* Judgment entered 9 October 1987 in Superior Court, WAKE County. Heard in the Court of Appeals 21 February 1989.

*Attorney General Lacy Thornburg, by Assistant Attorney General William B. Ray, for the State.*

*Office of the Appellate Defender, by Assistant Appellate Defender Staples Hughes, for defendant-appellant.*

BECTON, Judge.

A jury convicted defendant, Ernest James McDowell, Jr., of robbery with a dangerous weapon, first degree burglary, and two counts of second degree kidnapping. The judge sentenced defendant to the presumptive term of 14 years for the armed robbery offense, to the presumptive term of 15 years for the burglary conviction, and to the presumptive nine-year term for each of the two kidnapping offenses. The judge ordered that defendant serve the sentences consecutively, with the exception that one of the nine-year terms was to run concurrently with the first sentence he serves. Defendant appeals from the judgment. We affirm.

I

On 22 November 1985, two men came to the home of Ray Freeman and told him they wanted to buy drugs. Mr. Freeman said he did not have drugs, and the men left. The next evening, Mr. Freeman heard a knock at his kitchen door. He pulled aside a curtain covering a window in the door and saw the two men who had come to his house the previous day. When Mr. Freeman opened the door, the men forced their way in at gunpoint. One of the men carried a submachine gun.

STATE v. McDOWELL

[93 N.C. App. 289 (1989)]

Marcella Privette, Mr. Freeman's girlfriend, called out from another part of the house to ask who had knocked at the door. The gunmen told Mr. Freeman to call Ms. Privette into the kitchen. When she arrived, the two men ordered Mr. Freeman and Ms. Privette to remove their jewelry and to take their money out of their pockets. They then forced Mr. Freeman to remove his clothing. One of the men used duct tape to hogtie Mr. Freeman's hands to his ankles; he was placed on the floor of a hallway. After forcing Ms. Privette to pull the telephone out of the wall, the men bound her and left her beside Mr. Freeman.

The men searched through each room of the house. They continually asked where Mr. Freeman kept money, "reefers," and firearms. In addition to the jewelry and money, the men took clothing, books, a cordless telephone, a television, and a stereo. After the men left, Mr. Freeman and Ms. Privette were able to free themselves and telephone the police. Mr. Freeman gave the police a list of the property that had been stolen from him.

Two days later, on 24 November, two men came to the home of Alonzo Wilson. When the men arrived, Mr. Wilson noticed a white Toyota automobile in his driveway. The men asked Mr. Wilson if they could use his telephone. Mr. Wilson assented, and the men entered the house. One of them put a gun against Mr. Wilson's side and demanded his money. The men then ordered Mr. Wilson to take off his clothes; when he did, they hogtied him with tape.

At one point during the burglary, Ms. Wilson fled the house with one of her children. A third man, outside, stopped her and made her return to the house. Inside, the men bound the rest of the family and made them lie on the floor next to Mr. Wilson.

One of the gunmen went into a bedroom and overturned a jewelry box. He then returned and asked Mr. Wilson about weapons. (As happened during the Freeman robbery, the men ripped the Wilsons' telephone out of the wall. In addition, one of the two men inside the house carried a machine gun.) The men left the Wilson house with $1,500-$2,000 in cash.

Nearly three months later, on 19 February 1986, Durham Police Sergeant R. L. Layton pulled behind a white Toyota and turned on his lights and siren. The Toyota did not stop, and a chase ensued. The Toyota turned down a dead-end street, and defendant,

the driver, jumped from the vehicle and ran. Sergeant Layton pursued defendant and caught him.

At the Durham County Jail, jailer Paul Carlyle inventoried the items defendant had in his possession. Among the items were a watch, a bracelet, four necklaces, and three rings. The following day, investigators with the Durham Sheriff's Department took control of defendant's property. On 2 June 1986, a Wake County grand jury indicted defendant for the crimes stemming from the Freeman robbery.

At trial, Mr. Freeman identified the watch taken from defendant at the jail as being the watch that had been taken from him during the burglary of his home. Ms. Privette identified several of the items from the jail inventory as belonging to her or to Mr. Freeman. Ms. Privette also testified that, a few days after the robbery, she and Mr. Freeman identified defendant and his accomplice from books of photographs ("mug books").

Mr. Wilson testified that, a few days after the robbery at his home, he looked through mug books but had been unable to identify his assailants. Two or three weeks later, he viewed other pictures, and, this time, he identified defendant. Ms. Wilson identified defendant in the same manner.

Defendant's evidence tended to show that he and his wife, Willa Mae Geter McDowell, visited Ms. McDowell's mother in Sumter, South Carolina, from mid-November 1985 through the Thanksgiving holidays. Gloria Geter, defendant's sister-in-law, testified she saw defendant and Willa Mae McDowell regularly during that time, and she specifically recalled seeing defendant on 24 November. John Geter, the husband of Gloria Geter, corroborated his wife's testimony. Whilamena Geter, defendant's mother-in-law, gave testimony consistent with Gloria and John Geter's.

Willa Mae McDowell testified that she and defendant had visited in Sumter during the last two weeks in November. She examined each piece of jewelry taken from defendant at the Durham County Jail and testified that it belonged to him.

## II

[1] Defendant first argues that the trial judge erred by allowing the jury to hear evidence of the Wilson robbery. At trial, the judge conducted a *voir dire* examination of Mr. Wilson and ruled

**STATE v. McDOWELL**

[93 N.C. App. 289 (1989)]

that his testimony was admissible under Rule 404(b) of the North Carolina Rules of Evidence because it bore on the identity of the perpetrator of the Freeman robbery. Defendant contends that the judge erred because Mr. Freeman and Ms. Privette made positive identifications of defendant and because the Freeman and Wilson robberies significantly differed from one another. He argues that the unfairly prejudicial effect of the evidence of the Wilson robbery outweighed its probative value.

Rule 404(b) prohibits evidence of other crimes, wrongs or acts to prove the defendant's penchant to commit the crime for which he is on trial. N.C. Gen. Stat. Sec. 8C-1, R. Evid. 404(b) (1988). Generally, this rule means the State may not present evidence that the defendant committed other crimes that are distinct, independent, or separate from the offense charged, notwithstanding that the other offense is of the same type for which defendant is being tried. *See State v. Moore*, 309 N.C. 102, 106, 305 S.E. 2d 542, 544 (1983). Rule 404(b), however, though ostensibly proscriptive, is riddled with exceptions. If, for example, "the evidence tends to identify the accused as the perpetrator of the crime charged[,] it is admissible notwithstanding that it also shows defendant to be guilty of another criminal offense." *State v. Freeman*, 303 N.C. 299, 301, 278 S.E. 2d 207, 208 (1981).

As in *Freeman*, "The principal issue in this case was that of identification of defendant." *Id.* at 302, 278 S.E. 2d at 208. Although Mr. Freeman and Ms. Privette identified defendant as being one of the two gunmen, "defendant's evidence of alibi made the question of whether defendant was, indeed, the perpetrator the very heart of the case." *Id.* at 302, 278 S.E. 2d at 208-09. Evidence of the Wilson robbery, therefore, was relevant to the critical issue whether defendant helped commit the Freeman robbery.

Defendant alleges that the two incidents differed significantly enough to have made evidence of the Wilson robbery inadmissible. *See Moore*, 309 N.C. at 106, 305 S.E. 2d at 545 (before evidence of other crimes admissible, unusual facts or particularly similar acts must be present in both crimes to indicate same person committed them). In our view, the two robberies contained enough similarities to have suggested the same people committed both crimes. We find it especially probative that in both robberies only the male victims were made to disrobe, and, in each case, the male victims were hogtied with tape. In addition, in both robberies

the men took money, jewelry, asked about weapons, caused a telephone to be ripped from the wall, and one of the gunmen wielded a submachine gun.

We hold, therefore, that the judge correctly permitted the State to introduce evidence of the Wilson robbery. Defendant's defense of alibi put in issue whether he participated in the crimes at Mr. Freeman's house. The Wilsons' evidence, when coupled with the evidence of Mr. Freeman and Ms. Privette, tended to show that both burglaries were committed by the same people, and that defendant was one of the people involved. *See State v. Leggett*, 305 N.C. 213, 224, 287 S.E. 2d 832, 839 (1982). We overrule this assignment of error.

### III

[2] Defendant assigns error to the trial judge's allowing the jury to hear evidence that defendant attempted to flee from Sergeant Layton prior to defendant's arrest. We agree that the judge erred by permitting the State to introduce this evidence, but the error was harmless.

Evidence of a defendant's flight is admissible to demonstrate his consciousness of guilt. *See State v. Jones*, 292 N.C. 513, 525, 234 S.E. 2d 555, 562 (1977). A remote temporal connection between the crime and the flight episode relates merely to the weight of the evidence and not its admissibility. *State v. DeBerry*, 38 N.C. App. 538, 539-40, 248 S.E. 2d 356, 357 (1978). In this case, however, the judge declined to instruct the jury on flight as evidence of guilt because of the lapse of time between the Freeman robbery and defendant's arrest. The judge, though, did allow the State to present evidence of the car chase to show how the stolen property came into police custody. By permitting the evidence for this purpose, the judge erred.

In our view, the circumstances of defendant's apprehension by the police, if relevant at all, had only the slightest relevance. Although we recognize that evidence which is essentially background in nature may be admissible as an aid to a jury's understanding in some circumstances, *Santora, McKay & Ranieri v. Franklin*, 79 N.C. App. 585, 589, 339 S.E. 2d 799, 802 (1986), the probative value of testimony about the car chase was a dubious aid at best. Assuming, however, that the flight evidence was relevant to demonstrate how defendant and his possessions came into police

custody, the potential that this evidence might unfairly prejudice the jury should have caused the judge to exclude it pursuant to Rule 403 of the Rules of Evidence. The judge erred by not excluding the evidence under this rule.

In spite of the error, however, defendant has not demonstrated that, but for admission of this evidence, a different result would have been reached at trial. N.C. Gen. Stat. Sec. 15A-1443(a) (1988); cf. State v. Kimbrell, 320 N.C. 762, 767-69, 360 S.E. 2d 691, 693-95 (1987). Given the identification testimony and defendant's possession of the stolen property at the time of his arrest, defendant has not demonstrated that the judge committed reversible error by allowing the jury to hear the flight evidence. We overrule this assignment of error.

IV

We hold that defendant received a fair trial, free from prejudicial error. Consequently, the judgment is

Affirmed.

Judges PARKER and ORR concur.