STATE OF NORTH CAROLINA v. HASSELL LEE CORUM

No. COA05-443

(Filed 21 February 2006)

**1. Robbery— threat to victim—evidence sufficient**

There was sufficient evidence to support a conviction for the armed robbery of a store where an accomplice entered separately and began talking to the clerk, and defendant entered and threatened the accomplice with a knife to get the victim to open the

STATE v. CORUM

[176 N.C. App. 150 (2006)]

cash drawer. The defendant was just across a counter when he brandished the knife, and the jury could have inferred that defendant posed a danger to the life of the victim.

**2. Evidence— prior crimes and bad acts—common plan or scheme**

The trial court did not err in an armed robbery prosecution by admitting evidence of a prior robbery where the two robberies occurred in neighboring counties at night within a two-day period, both robberies occurred at convenience stores, and the perpetrator of both wore gloves and a blue hood or mask of similar description.

**3. Criminal Law— question from jury—written ex parte response**

The trial court did not err in an armed robbery prosecution by answering a question from the jury with a written response delivered by a bailiff. Defendant explicitly approved the procedure and defense counsel approved of the substance of the communication.

Appeal by defendant from judgment entered 7 September 2004 by Judge John O. Craig, III in Superior Court, Guilford County. Heard in the Court of Appeals 28 November 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General T. Lane Mallonee, for the State.*

*John T. Hall for defendant.*

McGEE, Judge.

Hassell Lee Corum (defendant) was convicted of robbery with a dangerous weapon and sentenced to a term of 132 months to 168 months in prison. At trial, William Earl Menikheim (Menikheim) testified that in October or November 2003, he and defendant spent part of one day drinking alcohol together at defendant's house. Menikheim further testified that he and defendant decided to drive in Menikheim's vehicle to get more beer around 8:00 p.m. or 9:00 p.m. While they were driving to get more beer, they decided to rob Hilltop Grocery and Hardware (the store) in Guilford County.

Menikheim testified that he parked his vehicle beside the store and went inside "to get a beer and see who was working." Menikheim returned to his vehicle and told defendant that "there was an older

lady working and nobody else was in [the store]." Menikheim testified he and defendant then left the store, drove around a little while, and returned to the store.

Menikheim testified he let defendant "out [of the car] down the road" from the store. Menikheim then drove to the store and parked in front. Menikheim entered the store and engaged the clerk in conversation. Menikheim told the clerk he was waiting for his brother. Menikheim testified he waited about five or ten minutes. He further testified as follows:

> [Defendant] came in. You know. Held her up with the knife. Told her that—to open up the cash register. And she was hesitant for a little while. So he turned the knife onto me and said, if she don't open it, I'll cut him. Then she opened up the drawer. [Defendant] grabbed the cash drawer and then [ran] out [of] the store.

Menikheim also testified that defendant wore a ski mask and tan gloves and used a big "chef cook knife" during the robbery.

Menikheim testified that after the robber left the store, the clerk asked him to "run out" to see what vehicle the robber was driving. Menikheim went outside and saw defendant run behind the store. Menikheim returned and told the clerk the robber was on foot. Menikheim told the clerk he had been drinking and did not want to talk to the police; Menikheim then left in his car. Menikheim testified he picked up defendant and the two of them got some beer and returned to defendant's house.

Cynthia Crouse (Ms. Crouse) testified she was working as a clerk at the store on 3 November 2003. Ms. Crouse testified a man came into the store, bought a beer and told her he was waiting for his brother. Ms. Crouse said the man waited a few minutes and then left. Ms. Crouse said the man returned and carried on a conversation with her. Ms. Crouse further testified that

> a few minutes later this guy came running in with a hooded—or a hood on and knife. And said open the drawer. And I sort of hesitated, you know, a minute. And he said open the drawer. You want me to take out your buddy over here, like that, and shook the knife at him. And then kind of—well, doesn't matter what it seemed to me. But anyway, then I opened the drawer, and he reached in and grabbed the cashier drawer, took it out, and left.

Ms. Crouse testified that the robber was just across the counter from her when he brandished the knife at Menikheim. Ms. Crouse testified the robber had on a "dark blue, hood jacket and covered his face[,]" and that the robber wore white gloves.

Andrea Azelton (Azelton), an investigator with the Randolph County Sheriff's Office, testified she searched defendant's house on 21 November 2003 and found a blue ski mask and a work glove in an air conditioning vent in defendant's house.

Clyde Staley (Staley) testified concerning a prior robbery allegedly committed by defendant. Staley testified that he was working as a clerk at the Quick Chek convenience store in Franklinville, North Carolina on 1 November 2003. Staley testified that a man wearing a blue ski mask and tan gloves and brandishing a large knife came into the Quick Chek convenience store on the night of 1 November 2003. The man walked up to the counter and "demanded the money or [Staley's] life." The man grabbed the money and left. Staley identified defendant as the man who had robbed him on 1 November 2003.

## I.

[1] Defendant first argues the trial court erred by denying his motion to dismiss the charge of robbery with a dangerous weapon because there was insufficient evidence that defendant endangered or threatened the life of Ms. Crouse by the use of a dangerous weapon. Defendant contends that because the use of the knife was a "sham" and was directed at Menikheim, Ms. Crouse's life was not endangered or threatened. The elements of robbery with a dangerous weapon are "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998). *See also*, N.C. Gen. Stat. § 14-87(a) (2005).

In deciding a motion to dismiss for insufficiency of the evidence, a trial court must determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). If substantial evidence exists, the motion to dismiss should be

denied. *Id.* at 584, 461 S.E.2d at 663. On appeal, we must view the evidence in the light most favorable to the State, drawing all inferences in the State's favor. *State v. Fritsch*, 351 N.C. 373, 378-79, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). It is within the province of the jury to resolve any contradictions and discrepancies in the evidence. *Id.* at 379, 526 S.E.2d at 455.

Defendant in the case before us contends he did not use the knife to endanger or threaten the life of Ms. Crouse. In *State v. Moore*, 279 N.C. 455, 183 S.E.2d 546 (1971), the defendant was convicted of armed robbery. *Id.* at 457, 183 S.E.2d at 547. The State presented testimony from Grover Lowery (Lowery) that the defendant walked up to Lowery's truck with a knife in his hand, demanded money, and took money from Lowery's pocket. *Id.* at 456, 183 S.E.2d at 547. Lowery further testified the defendant demanded Lowery's billfold, and Lowery told the defendant he did not have a billfold. *Id.* Lowery then began to close the door of his truck and the defendant struck at Lowery with the knife. However, the defendant struck the glass with the knife and Lowery was able to get away. *Id.* at 456-57, 183 S.E.2d at 547.

Lowery also testified he was not scared or fearful for his life during the robbery. *Id.* at 457, 183 S.E.2d at 547. On appeal, the defendant argued that Lowery's lack of fear negated the defendant's guilt. *Id.* However, our Supreme Court held that "[t]he jury might infer that one who engages in the perpetration of a robbery by means of an opened knife intends to use the knife to inflict injury to the extent necessary or apparently necessary to accomplish his purpose." *Id.* at 459, 183 S.E.2d at 548. Therefore, the Court upheld the defendant's conviction. *Id.*

Likewise, in the present case, the jury could have inferred that defendant posed a danger to the life of Ms. Crouse. Ms. Crouse testified that defendant "shook the knife at [Menikheim]" and threatened to "take out [Menikheim]" if Ms. Crouse did not open the cash drawer. Menikheim also testified that defendant "turned the knife onto [Menikheim]" and defendant said he would "cut [Menikheim]" if Ms. Crouse did not open the cash drawer. This evidence was sufficient to enable the jury to infer that Ms. Crouse's life was endangered and threatened by defendant's use of the knife.

The present case is also analogous to *State v. Thomas*, 85 N.C. App. 319, 354 S.E.2d 891 (1987). In *Thomas*, the defendant was convicted of two counts of robbery with a dangerous weapon. *Id.* at

319-20, 354 S.E.2d at 892. The evidence showed that Mr. and Mrs. Nicoll encountered the defendant as they walked toward their apartment building. *Id.* at 320, 354 S.E.2d at 892. While Mrs. Nicoll stood about one foot away from Mr. Nicoll, the defendant held a shotgun about nine inches from Mr. Nicoll's face and reached for Mr. Nicoll's notebook. When Mr. Nicoll said he had no money there, the defendant hit Mr. Nicoll in the face and Mr. Nicoll fell to the ground. The defendant then straddled Mr. Nicoll and took Mr. Nicoll's wallet and watch. *Id.*

Mrs. Nicoll went toward her husband, and her purse slipped off her shoulder onto her arm. The defendant took Mrs. Nicoll's purse and left. The defendant "did not strike Mrs. Nicoll, never pointed the gun at her and never spoke to her." *Id.*

On appeal, the defendant argued there was insufficient evidence he robbed Mrs. Nicoll with a dangerous weapon because there was no evidence he took Mrs. Nicoll's purse by threatening or endangering her life with a firearm. *Id.* at 321, 354 S.E.2d at 892-93. However, our Court held as follows:

> [The] [d]efendant's assault of Mr. Nicoll in order to take [Mr. Nicoll's] property spoke louder than any words of threat could have spoken to Mrs. Nicoll.
>
> Mrs. Nicoll was aware of [the] defendant's taking her purse from her arm; she did not resist. She had been standing about a foot from [Mr. Nicoll] during [the] defendant's assault upon [Mr. Nicoll]. While standing there, [Mrs. Nicoll] had seen [the] defendant reach for [Mr. Nicoll's] notebook[,] then knock [Mr. Nicoll] to the ground. [Mrs. Nicoll] had then seen [the] defendant take [Mr. Nicoll's] watch and wallet. It is clear from this evidence that [the] defendant made a threat to Mrs. Nicoll's life.

*Id.* at 321-22, 354 S.E.2d at 893.

In the present case, defendant similarly did not verbally threaten Ms. Crouse's life, and did not waive the knife at Ms. Crouse. However, defendant did threaten Menikheim's life, which caused Ms. Crouse to open the cash drawer. Additionally, Ms. Crouse testified defendant was just across the counter from her when he brandished the knife at Menikheim. When viewed in the light most favorable to the State, this evidence was sufficient to support a verdict of guilty of robbery with a dangerous weapon. Therefore, we overrule defendant's assignment of error.

## II.

**[2]** Defendant next argues that in violation of N.C. Gen. Stat. § 8C-1, Rule 404(b), the trial court erred by allowing the State to introduce evidence that defendant committed a prior robbery. Specifically, defendant argues there was "insufficient evidence of relevant and unusual facts common to both the charge on trial and the prior alleged act." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

"Rule 404(b) is a rule of inclusion, subject to the single exception that such evidence must be excluded if its *only* probative value is to show that [a] defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Berry*, 356 N.C. 490, 505, 573 S.E.2d 132, 143 (2002). In order for evidence to be admissible under Rule 404(b), it "must be offered for a proper purpose, must be relevant, must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant, and, if requested, must be coupled with a limiting instruction." *State v. Haskins*, 104 N.C. App. 675, 679, 411 S.E.2d 376, 380 (1991), *disc. review denied*, 331 N.C. 287, 417 S.E.2d 256 (1992).

In the present case, the State argues the evidence was admissible under Rule 404(b) to show that a common scheme or plan existed between the two crimes and to show the identity of defendant. The State also argues there were sufficient similarities between the two crimes to indicate defendant committed both crimes. We agree.

"[E]vidence that [a] defendant committed similar acts which are not too remote in time may be admitted to show that these acts and those for which the defendant is being tried all arose out of a common scheme or plan on the part of the defendant." *State v. Rosier*, 322 N.C. 826, 828, 370 S.E.2d 359, 360-61 (1988). Also, evidence of a prior bad act is admissible to establish the identity of a defendant. N.C. Gen. Stat. § 8C-1, Rule 404(b); *State v. Gary*, 348 N.C. 510, 521, 501 S.E.2d 57, 64-65 (1998). However, in order to be relevant, "there must be shown some unusual facts present in both crimes or particularly similar acts which would indicate that the same person commit-

ted both crimes." *State v. Moore*, 309 N.C. 102, 106, 305 S.E.2d 542, 545 (1983).

Defendant's alleged robbery of the Quick Chek convenience store was sufficiently similar to the charged robbery at issue in the case before us to allow admission of Staley's testimony. The robberies occurred in neighboring counties at night within a two-day period. Both robberies occurred at convenience stores. Also, the perpetrator of both robberies wore gloves and a blue hood or mask of similar description. Accordingly, the trial court did not err by allowing Staley's testimony and we overrule this assignment of error.

Although defendant attempts to argue that the probative value of the evidence concerning the Quick Chek convenience store robbery was substantially outweighed by the danger of unfair prejudice, defendant does not allege any prejudice. Additionally, defendant did not assign error to this issue in the record on appeal, and we do not review it. N.C.R. App. P. 10(a).

## III.

**[3]** Defendant argues the trial court erred when it "directed the bailiff to conduct *ex parte* communication of instructions to the jury." N.C. Gen. Stat. § 15A-1234(d) (2005) directs that "[a]ll additional instructions must be given in open court and must be made a part of the record." N.C. Gen. Stat. § 15A-1236(c) (2005) states:

> If the jurors are committed to the charge of an officer, he must be sworn by the clerk to keep the jurors together and not to permit any person to speak or otherwise communicate with them on any subject connected with the trial nor to do so himself, and to return the jurors to the courtroom as directed by the judge.

In *State v. Gay*, 334 N.C. 467, 434 S.E.2d 840 (1993), the defendant argued the trial court erred by directing the bailiff to inform the jurors they were on break and they should continue to abide by the trial court's earlier instructions. *Id.* at 482, 434 S.E.2d at 848. The defendant's attorney approved of this procedure and declined the opportunity to be heard on the matter. *Id.* The Court held the subject matter of the communication did not amount to an instruction as to the law and did not relate to the defendant's guilt or innocence. The Court also held that the subject matter of the communication did not implicate the defendant's right of confrontation. *Id.* The Court emphasized the defendant's approval of the shorthand procedure and found no reversible error. *Id.* at 482-83, 434 S.E.2d at 848.

**STATE v. CORUM**

[176 N.C. App. 150 (2006)]

In the present case, the jury delivered the following written question to the trial court through the bailiff: "Was photo of [defendant] included in lineup for Ms. Crouse?" Defendant's counsel requested the trial court to instruct the jurors to "rely on their own recollections" and the trial court agreed. The trial court said it would prefer to send a written response to the jurors rather than having the jurors return to the courtroom, and asked defendant's counsel and the State if they had any objections to that procedure.

Both defendant's counsel and the State agreed to the shorthand procedure. The trial court then had defendant brought into the courtroom to make certain defendant had no objection to the shorthand procedure. Defendant's counsel consulted with defendant and defendant's counsel said: "Your Honor, [defendant] is satisfied with that way of handling it." The trial court then wrote its response on the same piece of paper on which the jury's question was written, as follows: "You must rely on your own recollection as to what the evidence showed." The trial court instructed the bailiff to deliver the note to the jury.

As in *Gay*, the substance of the communication in the present case did not implicate defendant's right of confrontation. As in *Gay*, defendant in the present case explicitly approved of the procedure. Moreover, it is clear that defendant's counsel approved of the substance of the communication because defendant's counsel requested the trial court to make the instruction to the jury. Accordingly, we find no reversible error and overrule this assignment of error.

No error.

Chief Judge MARTIN and Judge ELMORE concur.